645 A.2d 219

Robert L. KING,

v.

Ralph C. BOETTCHER, Executor of the Estate
of Patricia E. Boettcher, deceased,

Pennsylvania Medical Society Liability Insurance Company,
a corporation; and Pennsylvania Medical Professional
Liability Catastrophe Loss Fund.

Appeal of PENNSYLVANIA MEDICAL PROFESSIONAL
LIABILITY CATASTROPHE LOSS FUND At No.
102.

Appeal of Ralph C. BOETTCHER At No. 103.

Supreme Court of Pennsylvania.

Argued Jan. 27, 1994.

Decided July 26, 1994.

Reargument Denied Aug. 31, 1994.

Richard L. McMonigle, Jr., Philadelphia, for Pa. Medical Professional Liability Catastrophic Loss Fund.

Donald A. Tortorice, Arthur K. Hoffman, Matthew Chabal, III, Harrisburg, for amicus curiae—Hosp. Assn. of Pa.

Robert J. Donahoe, Pittsburgh, for R.C. Boettcher.

Edward D. Klym, Pittsburgh, for Pa. Medical Soc. Liability Ins. Co.

M. Theresa Creagh, Pittsburgh, for R.L. King.

Robert B. Hoffman, Harrisburg, for amicus curiae—Pa. Medical Soc.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

*OPINION OF THE COURT*

FLAHERTY, Justice.

The issue presented by this case is whether the Medical Professional Liability Catastrophe Loss Fund (the "CAT Fund") created by the Health Care Services Malpractice Act, 40 P.S. § 1301.101 et. seq. ("the Act"), is liable for post-judgment interest when it fails to pay a judgment awarded against it when the judgment is due.

In the underlying medical malpractice action, Boettcher brought a wrongful death and a survival action against Dr. Robert L. King ("the doctor") for the death of Boettcher's wife, which occurred in the course of medical treatment performed by the doctor. On March 30, 1987, the jury returned a verdict in favor of Boettcher for $500,000.00. Following an appeal to Superior Court and a petition for allowance of appeal to this court, the case was remanded to the trial court for entry of judgment in Boettcher's favor. On December 21, 1989 the doctor's insurer, Pennsylvania Medical Society Liability Insurance Company (PMSLIC), paid a total of $265,054.32 to Boettcher. This amount was comprised of $100,000, which was the limit of PMSLIC's total liability, plus delay damages of $54,390.82, and post-judgment interest from the date of the verdict to the date of PMSLIC's payment in the amount of $110,655.50.[1]

Following remand, on April 3, 1990, the court of common pleas awarded delay damages based on a stipulation of the parties and verdicts were molded by an order of court. The court entered judgment in the amount of $674,873.27, and on December 31, 1990, the CAT Fund paid Boettcher $520,475.00. PMSLIC had already paid $265,054.32, bringing Boettcher's total receipts to $785,529.32.

After receiving the CAT Fund's payment, Boettcher sought payment of post-judgment interest from the doctor, PMSLIC, or the CAT Fund.[2] The doctor then brought this declaratory judgment action in Commonwealth Court for a determination of whether post-judgment interest was due and who was liable, if anyone. The parties filed cross-motions for judgment on the pleadings or for summary judgment. On September

---

1. PMSLIC paid post-judgment interest on *the entire verdict* from March 30, 1987 through December 21, 1989, the date it tendered payment of $265,054.32 to Boettcher, pursuant to a clause in its contract requiring payment of interest on the entire verdict.

2. Boettcher claims that he is entitled to 6% interest on $520,475.00, the portion of the judgment paid by the CAT Fund, from December 21, 1989, when PMSLIC issued its payment, to December 31, 1990, when the CAT Fund issued its payment. The post-judgment interest claimed is $32,084.03.

15, 1992, Commonwealth Court held that post-judgment interest is due and that it is payable by the CAT Fund.

Boettcher and the CAT Fund filed cross-appeals pursuant to 42 Pa.C.S. § 723(a), which allows appeals as of right to this court from a final order of Commonwealth Court in a matter which was originally commenced in that court. The sole issue in the case is whether Boettcher is entitled to interest on that portion of the verdict which is in excess of $100,000, and if he is, whether the doctor, the doctor's liability insurer, PMSLIC, or the CAT Fund is liable to pay the interest. For the reasons that follow, we affirm Commonwealth Court's determination that the CAT Fund is liable for post-judgment interest.

Section 8101 of the Judicial Code, 42 Pa.C.S. § 8101, provides:

Except as otherwise provided by another statute, a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict or award, or from the date of the judgment, if the judgment is not entered upon a verdict or award.

The only question in the case is whether "another statute" exempts the CAT Fund from paying interest as is required by § 8101. The CAT Fund argues that the Act exempts the CAT Fund from payment of post-judgment interest; that the CAT Fund is without authority to pay post-judgment interest; that the CAT Fund is required by the Act to delay payment of judgments, and should, therefore, not be required to pay interest on the delay; and that requiring the CAT fund to pay post-judgment interest would run counter to the purposes of the act.

The Pennsylvania Health Care Services Malpractice Act mandates the creation of a fund which provides excess professional liability coverage for health care providers to the extent that their liability for malpractice exceeds their individually purchased insurance coverage, which all health care providers are required to obtain. Participation in the fund is mandatory, and at the time period relevant to this lawsuit, professional

liability coverage was required in the amount of $100,000 per occurrence, and $300,000 per annual aggregate.

■ Section 701 of the Act, 40 P.S. § 1301.701, provides that the fund may levy an annual surcharge on health care providers in order to remain self-sustaining and it also, if necessary, can levy emergency surcharges. In addition, § 701(e)(2) provides, in pertinent part:

The fund and all income from the fund shall be held in trust, deposited in a segregated account, invested and reinvested by the director, and shall not become a part of the General Fund of the Commonwealth. All claims shall be computed on August 31, 1981 for all claims which become final between January 1, 1981 and August 31, 1981 and annually thereafter on August 31 for all claims which became final between that date and September 1 of the preceding year. *All such claims shall be paid on or before December 31* following the August 31 by which they became final, as provided above. All claims which become final between January 1, 1980 and the effective date of this amendatory act shall be computed on the effective date of this amendatory act and shall be paid on or before December 31, 1980.

(Emphasis added.) [3]

■ In short, the CAT Fund is a statutorily mandated fund which serves as a secondary insurer in medical malprac-

---

**3.** The Act provides that all awards, judgments and settlements shall be paid on or before the December 31 following the August 31 by which they become final. 40 Pa.S. § 1301.701(e)(2). Superior Court describes this payment plan as follows:

Under this statutory scheme, a successful plaintiff may have to wait as long as fifteen (15) months for payment of the remainder of the judgment above that provided by the primary carrier if the final judgment on the case occurred on September 1, or may have to wait as short a time as three (3) months, if the final judgment date is August 31. In any case, plaintiffs have to await payment on the judgment, because there is a built in [sic] delay between the vesting of the right to collect from the Fund and the actual receipt of the payment.

*Tominello v. Janeway*, 392 Pa.Super 404, 408, 573 A.2d 218, 220 (1990). Although this description of the act is generally correct, we disagree that there is necessarily a built in delay in the fund's payment of judgments. There *may* be a delay.

tice cases. The fund, in which virtually all health care providers must participate, provides coverage for medical malpractice liability exceeding the individual coverage which a health care provider must have, up to $1,000,000 for each occurrence. Should the fund's liabilities exceed its assets, it is empowered to levy emergency assessments against its participants in order to meet its liabilities. Our research indicates no provision of the Act, however, exempting the CAT Fund from post-judgment interest.

We have set out a description of the general function of the CAT Fund in order to address what we perceive to be the fund's primary argument: that its functioning and purpose [4] are so important that neither should be impaired by assessing what amounts to an additional cost of doing business—the payment of post-judgment interest. The problem with this argument is that it is inappropriate in a case such as this where the words of the applicable statutes are clear and free of ambiguity.

It is axiomatic that courts may not delve into the murky waters of legislative intent where the words of the applicable statutes are clear:

When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

Contrary to the arguments of the fund and the description of Superior Court, the fund is not required to wait until December 31 to pay judgments. The plain terms of the Act permit the fund to pay its liabilities "on or before December 31" of each year. It is entirely possible, pursuant to this language, that the fund could pay its liabilities *before* December 31 of each year, thereby avoiding post-judgment interest.

**4.** Section 1301.102 of the Act provides:

**Purpose**

It is the purpose of this act to make available professional liability insurance at a reasonable cost, and to establish a system through which a person who has sustained injury or death as a result of tort or breach of contract by a health care provider can obtain a prompt determination and adjudication of his claim and the determination of fair and reasonable compensation.

1 Pa.C.S. § 1921(b). The words of § 8101 are clear and we have found no statute which exempts the CAT Fund from § 8101. We may not, therefore, disregard the words of the statute in favor of an interpretation which would arguably enhance the purposes of the Health Care Services Malpractice Act.

Since there is no statutory provision which exempts the CAT Fund from post-judgment interest, it is inescapable that the provisions of § 8101, requiring post-judgment interest, apply to the CAT Fund.

It is possible that the legislature did not intend the CAT Fund to pay post-judgment interest, and if that is the case, the legislature has the power expressly to exempt the fund from the payment of post-judgment interest as it sees fit. To date, it has not done so.

The order of Commonwealth Court is affirmed.

ZAPPALA, J., files a concurring opinion.

MONTEMURO, J., is sitting by designation as senior justice pursuant to Judicial Assignment Docket No. 94 R1801 due to the unavailability of LARSEN, J., see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.

ZAPPALA, Justice, concurring.

I join in the Majority Opinion and write only to reiterate the fact that it is the legislature who possesses the power to expressly exempt the CAT Fund from the payment of post-judgment interest. Because I believe that the legislature may have inadvertently omitted such an exemption, I would hope that prompt corrective action be taken by the General Assembly to remedy the matter.