702 A.2d 850

**Andrew A. WILLET, M.D., Appellant,**

**v.**

**PENNSYLVANIA MEDICAL CATASTROPHE LOSS FUND,
Pennsylvania Medical Society Liability Insurance Company,
and PHICO Insurance Company, Appellees [No. 104A].**

**GREENE COUNTY MEMORIAL HOSPITAL, Appellant,**

**v.**

**PENNSYLVANIA MEDICAL CATASTROPHE LOSS FUND,
Pennsylvania Medical Society Liability Insurance Company,
and PHICO Insurance Company, Appellees [No. 104B].**

Supreme Court of Pennsylvania.

Argued May 1, 1997.

Decided Nov. 3, 1997.

Reargument Denied Jan. 12, 1998.

614

David Trushel, Pittsburgh, for Andrew A. Willet, M.D.

John David Rhodes, Pittsburgh, for Greene County Memorial Hosp.

Thomas A. Matis, John W. Jordan, IV, Pittsburgh, for CAT Fund.

Daniel P. Stefko, Terry C. Cavanaugh, Lisa D. Dauer, Pittsburgh, for PMSLIC.

Stephen A. Ryan, King of Prusia, for PHICO.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION

NIGRO, Justice.

This consolidated appeal arises from the filing of amended complaints by appellants, Andrew A. Willet, M.D. (" Dr. Willet") and Greene County Memorial Hospital ("Hospital"), within the original jurisdiction of the Commonwealth Court,[1] seeking indemnity or contribution from appellees, the Pennsylvania Medical Catastrophe Loss Fund ("CAT Fund"), Pennsylvania Medical Society Liability Insurance Company ("PMSLIC") and PHICO Insurance Company.[2]

The question presented on appeal is whether the Commonwealth Court erred in sustaining the demurrer of the CAT Fund to the appellants' amended complaints. Appellants seek indemnification for a portion of the delay damages added to a $4 million verdict in an underlying medical malpractice action. For the reasons set forth below, we reverse the decision of the Commonwealth Court.

PMSLIC issued Dr. Willet a professional liability insurance policy providing basic liability coverage of up to $200,000 per occurrence. PHICO provided basic liability insurance for the

1. The Commonwealth Court of Pennsylvania has exclusive jurisdiction to hear and determine controversies involving the CAT Fund, an agency of the Commonwealth. Pa. R.A.P. 1101.

2. The Hospital's indemnity/contribution claim is limited to the CAT Fund only.

Hospital in the same amount. In addition, each appellant participated in the contingency fund administered by the CAT Fund, a Commonwealth agency established by the Pennsylvania Health Care Services Malpractice Act, 40 P.S. §§ 1301.101–1301.1006 ("the Act"), which requires the CAT Fund to provide an additional $1 million in liability coverage for each appellant. Lastly, in addition to its basic policy, PHICO also provided the Hospital with a policy for excess liability coverage of up to $3 million.

On May 14, 1991, plaintiff, Terry Harding, filed a civil action seeking damages for medical negligence of, among others, Dr. Willet and the Hospital. Harding's lowest pre-trial settlement demand was $3 million. By March 23, 1993, PMSLIC and PHICO each tendered their respective $200,000 limits of basic coverage toward settlement.

From May 14, 1991, until February 25, 1994, despite the urging of Dr. Willet and the Hospital, who recognized a meritorious and significant medical malpractice claim and sought to resolve the matter and avoid trial, the CAT Fund did not tender the limits of the respective policies.

On January 25, 1994, PHICO, as the Hospital's excess carrier, asked the CAT Fund to tender its coverage limits to PHICO so it could attempt settlement. On February 10, 1994, the CAT Fund tendered its $1 million limits to PHICO, on behalf of the Hospital. Upon receipt of the funds, PHICO assumed control over the negotiations on behalf of the Hospital. PHICO then offered $800,000 from the Hospital's excess coverage, making the total offer for settlement on behalf of the Hospital $2 million.[3] The CAT Fund also indicated it would contribute only $300,000 of its $1 million toward a "global settlement," making the settlement offer on behalf of Dr. Willet $500,000.00. However, as neither offer met plaintiff's settlement demand of $3 million, the case proceeded to trial.

3. PHICO initially offered plaintiff $2 million for a joint-tortfeasor release of the Hospital only, and also offered $2.5 million for a settlement discharging all parties.

On February 25, 1994, the jury returned a $4 million verdict for plaintiff, for which Dr. Willet was deemed to be 60% liable and the Hospital 40% liable. On May 12, 1994, the trial court granted plaintiff's Petition for Delay Damages pursuant to Pa. R.C.P. 238 in the amount of $508,902 for the period of May 15, 1992, until February 22, 1994.[4] The Superior Court affirmed the order adding delay damages to the verdict and this Court denied allocatur. Appellants then filed separate amended complaints against the CAT Fund seeking "indemnity or contributions representing all or half of those delay damages and accrued interest attributable to the period from March 23, 1993 through February 10, 1994," representing the time period in which the CAT Fund was in control of settlement negotiations with plaintiff. Specifically, Dr. Willet seeks reimbursement from the CAT Fund and/or PMSLIC whereas the Hospital seeks the same relief for the same period from the CAT Fund only.[5]

In November 1995, the CAT Fund, PMSLIC and PHICO separately filed preliminary objections to both Dr. Willet's and the Hospital's amended complaints. Specifically, in its preliminary objections, the CAT Fund asserted the relief requested by appellants is expressly barred by 40 P.S. § 1301.701(d), and as an executive agency of the Commonwealth, sovereign immunity further bars any right to relief appellants may have. *See* preliminary objections to respective appellants' amended complaints, ¶¶ 4,5. On December 21, 1995, the Commonwealth Court sustained the CAT Fund's preliminary objections in the nature of a demurrer and found that no legal basis

---

**4.** Rule 238 provides, in pertinent part, as follows:

(a)(2) Damages for delay shall be awarded for the period of time

\* \* \* \*

(ii) in an action commenced on or after August 1, 1989, from a date one year after the date of original process was first served in the action up to the date of the award, verdict or decision.

Pa. R.C.P. 238.

**5.** The Hospital's amended complaint contains a claim for contribution which the Hospital asserts is a precaution should it be contended that the Hospital and/or PHICO shared with the CAT Fund primary responsibility for conducting settlement negotiations from 3/23/93 through 2/10/94. *See* Hospital's brief at p. 36.

exists upon which to hold the CAT Fund liable, and as a result, the Commonwealth Court determined that PMSLIC's and PHICO's preliminary objections were moot.

In sustaining the CAT Fund's preliminary objections, the Commonwealth Court found that there is no legal basis for either indemnification or contribution from the CAT Fund. Slip Op. at p. 7. Further, the court determined that the CAT Fund only had a combined total of $2.4 million to offer ($400,000 in basic coverage from the Hospital and Dr. Willet + $2 million in CAT Fund coverage for the Hospital and Dr. Willet = $2.4 million) and, therefore, there is no factual basis for the contention that the CAT fund could have met plaintiff's lowest settlement demand of $3 million. *Id.*

 A court should sustain preliminary objections in the nature of a demurrer only where:

> the complaint is insufficient to establish the pleader's right to relief. . . . For the purpose of testing the legal sufficiency of the challenged pleading a preliminary objection in the nature of a demurrer admits as true all well-pleaded, material, relevant facts . . . and every inference fairly deducible from those facts. . . . The pleader's conclusions or averments of law are not considered to be admitted as true by a demurrer.
>
> Since sustaining the demurrer results in a denial of the pleader's claim or dismissal of his suit, a preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted. . . . If the facts as pleaded state a claim for which relief may be granted under any theory of law then there is sufficient doubt to require the preliminary objection in the nature of a demurrer to be rejected. . . .

*The County of Allegheny v. The Commonwealth of Pennsylvania,* 507 Pa. 360, 372, 490 A.2d 402, 408 (1985) (citations omitted). Moreover, where doubt exists as to whether a demurrer should be sustained, the doubt should be resolved in

favor of overruling it. *Mahoney v. Furches,* 503 Pa. 60, 66, 468 A.2d 458, 461–62 (1983).

Appellants argue that in sustaining the CAT Fund's preliminary objections, the Commonwealth Court committed an error of law. They argue the Commonwealth Court failed to accept as true all the well-pleaded facts and inferences reasonably deducible from the parties' respective amended complaints. Appellants assert their liability for the delay damages which accrued while the CAT Fund was in control of the negotiations was vicarious, and the law of indemnity provides an equitable remedy to shift the delay damages from them to the party who occasioned the loss, the CAT Fund.[6] Moreover, they assert that sovereign immunity presents no barrier to their cause of action against the CAT Fund.

Appellants' arguments are persuasive. In reaching its decision, the Commonwealth Court rejected key allegations in the amended complaints, and in doing so, failed to adhere to the proper decisional standard for preliminary objections in the nature of a demurrer. Moreover, the Commonwealth Court presumed that PHICO, the Hospital's excess carrier, was blameworthy by indicating that "[n]owhere is it alleged that PHICO ever tendered its excess coverage to the CAT Fund to be used by the CAT Fund to effect a settlement." Slip Op. at p. 7.

*Statutory Framework For Payment Priority*

■ We find the Commonwealth Court declined to accept the facts as pled by appellants and misapplied the principles surrounding global settlements in medical malpractice cases involving multiple insurers. The court failed to apply § 1301.705(a) of the Act, 40 P.S. §§ 1301.101–1301.1006, which provides for the order of payment in medical malpractice

6. Appellants allege that by statute, § 1301.705(a) of the Act, 40 P.S. §§ 1301.101–1301.1006, the CAT Fund alone owed the next $1 million for both Dr. Willet and the Hospital and the Fund possessed exclusive control over settlement negotiations. Thus began the period for which the delay damages at issue began to accrue. Further, Appellants maintain that the CAT Fund delayed for more than six months before turning the matter over to its claims committee and making settlement offers on behalf of appellants.

actions involving multiple insurers. Specifically, § 1301.705(a) provides:

> No insurer providing excess liability insurance to any health care provider eligible for coverage under the Medical Professional Liability Catastrophe Loss Fund shall be liable for payment of any claim against a health care provider for any loss or damages except those in excess of the limits of liability provided by the Medical Professional Liability Catastrophe Loss Fund.

Further, in *American Casualty Co. of Reading Pa. v. PHICO Insurance Co.*, 537 Pa. 295, 643 A.2d 91 (1994), we indicated that the order of payment of insurance proceeds must be determined by reference to § 1307.705(a); the first $200,000 of liability must be borne by the primary carriers, the CAT Fund is obligated to pay the next $1 million and the excess carrier is responsible for the amount of the judgment that exceeds the underlying limits. *Id.* at 301–03, 643 A.2d at 95. In the case *sub judice*, the Commonwealth Court rejected appellants' allegations that the CAT Fund had exclusive authority and control over settlement negotiations and owed the next $1 million of any settlement involving the Hospital or Dr. Willet after receipt of the tenders of the parties' basic liability coverage. Amended Complaints: Dr. Willet at ¶ 11, Hospital at ¶ 24.

In rejecting the allegations that the CAT Fund was the entity that owed the next share of the settlement claim and had exclusive authority over settlement negotiations during the period for which indemnity is sought, the lower court misapplied the standards established in *The County of Allegheny, supra,* and the statutory framework in 40 P.S. § 1301.705(a) and *American Casualty Co., supra.*

*Delay Damages and Indemnity/Contribution*

█ Fault on the part of the CAT Fund while it was in charge of the negotiations is the fundamental premise upon which the Hospital and Dr. Willet now claim indemnification from the Fund. Indemnity is a common law remedy which shifts the entire loss from one who has been compelled, by

reason of some legal obligation, to pay a judgment occasioned by the initial negligence of another who should bear it. *Builders Supply Co. v. McCabe*, 366 Pa. 322, 325, 77 A.2d 368, 370 (1951); *See* Restatement of Restitution § 76 (1962). "It is not a fault sharing mechanism . . . it is a fault shifting mechanism [where a defendant] seeks to recover his loss from a defendant who was actually responsible for the accident which occasioned the loss." *Sirianni v. Nugent Brothers, Inc.*, 509 Pa. 564, 570–71, 506 A.2d 868, 871 (1986). Further, "[t]he duty to indemnify will be recognized in cases where the community opinion would consider that in justice the responsibility should rest upon one rather than the other." *Mixter v. Mack Trucks, Inc.*, 224 Pa.Super. 313, 317, 308 A.2d 139, 141–42 (1973) (quoting W. Prosser, The Law of Torts 33 (4th ed.1971)).

■ In reaching its decision to sustain the CAT Fund's preliminary objections, the Commonwealth Court found there was no basis in law for either contribution or indemnity from the CAT Fund. However, appellants assert that under Pa. R.C.P. 238 delay damages provides such a basis, imposing vicarious liability for the delay damages which accrued while the CAT Fund was in control of the negotiations.[7] Appellants argue the negotiating obligations of the CAT Fund establish a legal basis to hold the CAT Fund liable under an indemnity claim for the delay damages they paid, restricted to a specific duration. In *Judge v. Allentown & Sacred Heart Hospital Center*, 90 Pa. Commw. 520, 496 A.2d 92 (1985), the Commonwealth Court considered the sufficiency of a claim for equitable indemnity. There, the CAT Fund filed an action against a hospital and its insurer seeking indemnification for the money

7. Delay damages are a form of pre-judgment interest designed to compensate a prevailing plaintiff for the loss of funds that the jury verdict reflects were owed to plaintiff if the funds were promptly received. *Costa v. Lauderdale Beach Hotel*, 534 Pa. 154, 160 n. 6, 626 A.2d 566, 569 n. 6 (1993). The purpose of the rule is to both compensate the plaintiff for the delay in receiving funds and to encourage the prompt resolution of meritorious claims. *Woods v. Commonwealth Dept. of Transportation*, 531 Pa. 295, 300, 612 A.2d 970, 972 (1992)(holding that delay damages can be imposed upon a Commonwealth party even where the total payment exceeds that party's statutory liability limit).

the CAT Fund paid in settling the underlying medical malpractice action. The Commonwealth Court recognized that the right of indemnity inures to the benefit of the entity who, while not at fault, is compelled to pay damages occasioned by the negligence of another. *Id.* at 522–24, 496 A.2d at 94 (citing *Burbage v. Boiler Engineering & Supply Co.*, 433 Pa. 319, 249 A.2d 563 (1969)). Accordingly, the *Judge* court overruled the hospital and insurer's preliminary objections, finding the CAT Fund alleged sufficient facts to support a cause of action for indemnity.

Similarly, here, appellants allege they were required to pay delay damages solely as a result of the CAT Fund's failure to conduct fair and reasonable negotiations during the period of time when: 1) it exercised exclusive control over the settlement negotiations with the plaintiff; 2) it was responsible for providing the next $1 million of coverage for Dr. Willet and the Hospital; 3) it provided a total of $1.3 million of its available $2 million of its total statutory authority.

Notably, appellants do not allege that the CAT Fund should have offered more than $1 million on behalf of each covered health care provider. Rather, they claim that the underlying lawsuit would have been settled for $3 million had the CAT Fund offered or tendered in settlement at least $1.8 million of its available $2 million in coverage.[8] Appellants allege the CAT Fund withheld coverage that, if offered, could have effectuated a settlement and would have avoided imposition of delay damages on appellants. As pled, these circumstances support the inference that while the CAT Fund was in control of negotiations, its offers were limited in order to minimize its payments while placing the risk of having delay damages assessed against Dr. Willet and the Hospital.[9] As such, the

8. The CAT Fund providing $1.8 million + $400,000 in basic coverage from appellants' primary coverage + $800,000 in excess from PHICO = $3 million for settlement.

9. The Commonwealth Court reasons that the CAT Fund's ability to provide a maximum of $2.4 million of the $3 million settlement demand equates to a finding that the CAT Fund should not be held liable. Slip Op. at p. 7. The fact that the Fund refused to extend an offer sufficient to effectuate a settlement is inequitable given appellants are compelled

Commonwealth Court did not accept as true all well-pleaded material and relevant facts that 1) the CAT Fund's failure to commit up to the full amount of their coverage was the cause of failed settlement negotiations and assessment of delay damages; and 2) the law of indemnity provides a legal basis to hold the CAT Fund liable for the portion of delay damages attributable to the time period in which the CAT Fund retained exclusive control over settlement negotiations. Thus, the respective amended complaints effectively plead a cause of action for indemnification that should have survived the preliminary objections. Accordingly, the Commonwealth Court erred in sustaining the CAT Fund's preliminary objections under the demurrer standard embraced in *The County of Allegheny, supra.*

*Sovereign Immunity*

In its preliminary objections, the CAT Fund maintains that its liability, if any, for the delay damages at issue is barred by sovereign immunity.[10] However, in *Tulewicz v. Southeastern Pa. Transp. Auth.*, 529 Pa. 588, 606 A.2d 427 (1992) this Court held that delay damages were properly awarded against a Commonwealth agency even though the total liability would exceed the statutory limits for that agency. In *Tulewicz*, we

by law to purchase $1 million worth of coverage with the CAT Fund. 40 P.S. §§ 1301.101–1301.1006. Compulsory participants are required to pay an annual fee and surcharge as a condition of licensure. *Meier v. Maleski*, 167 Pa.Commw. 458, 464–65, 648 A.2d 595, 598 (1994). Despite appellants' participation and compliance with the CAT Fund's requirements, the Fund refused to extend an offer it was requested to extend, and would have averted a need for a trial which resulted in a $4 million verdict.

10. It is noteworthy that after this appeal was filed, our legislature amended the Pennsylvania Health Care Services Malpractice Act, 40 P.S. §§ 1301.101–1301.1006, providing:

Delay damages and post-judgment interest applicable to the Fund's liability in a case shall be charged to the Fund and shall not be charged against the insured's aggregate limits. The basic insurance carrier or self-insurer shall be responsible for its proportionate share of the delay damages and post-judgment interest.

40 P.S. § 1301.702(J). The amendments, known as Act 135 of 1996, provide that provisions concerning the CAT Fund are to take effect immediately upon signature by the Governor which occurred on November 26, 1996.

rejected the argument that the Pennsylvania Sovereign Immunity Act, 42 Pa.C.S. § 8528(b), did not allow for the imposition of such damages. Relying on *Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 436 A.2d 147, *appeal dismissed*, 456 U.S. 940, 102 S.Ct. 2002, 72 L.Ed.2d 462 (1982), we concluded that Rule 238 is procedural and within this Court's power to promulgate. To the extent that the Sovereign Immunity Act is inconsistent with Rule 238, it is suspended. *See also Woods v. Commonwealth Dept. of Transp.*, 531 Pa. 295, 612 A.2d 970 (1992) (citing *Tulewicz* and utilizing similar reasoning, the Pennsylvania Department of Transportation's contention that delay damages are not recoverable as beyond its statutory limits was rejected).

██ Further, in *King v. Boettcher*, 537 Pa. 574, 645 A.2d 219 (1994), we held that there is no statutory provision which exempts the CAT Fund for post-judgment interest. Notably, in *King*, the CAT Fund's share of the award, when added to the post-judgment interest, did not exceed the CAT Fund's statutory cap. However, in *Montgomery Hospital v. Medical Professional Liability Catastrophe Loss Fund*, 668 A.2d 221 (Pa.Cmwlth.1995), the Commonwealth Court, following the rationale in *King*, found that post-judgment interest is not limited by the statutory cap. In that case, a verdict of $2.78 million was secured by plaintiff against Montgomery Hospital and a doctor. When the CAT Fund's delay in paying its share of the award resulted in imposition of $80,000 in post-judgment interest, the Hospital and Doctor sought to force the CAT Fund to pay the interest. The Commonwealth Court found a Commonwealth party could be liable for post-judgment interest even though such interest would require the Commonwealth party to pay in excess of its statutory limit. *Id.* at 223. Following the rationale employed in the cited cases, there is no statutory provision that would exempt the CAT Fund from paying pre-judgment delay damages. To the extent that the Pennsylvania Health Services Malpractice Act would preclude such a ruling, under *Woods, Tulewicz* and *Montgomery Hospital*, the Act is deemed suspended as inconsistent with Rule 238. As such, the CAT Fund may be held

liable for an amount above its statutory limit of $1 million per occurrence.

*PMSLIC's Preliminary Objections Ruled as Moot*

 Appellant, Dr. Willet, also claims that the Commonwealth Court erred in concluding that PMSLIC's preliminary objections to his amended complaint were moot. He maintains that his allegations and the reasonable inferences drawn therefrom reveal that PMSLIC's conduct contributed to the accrual of substantial delay damages. Specifically, PMSLIC delayed a full ten months beyond the one-year grace period before tendering its policy limits. Dr. Willet's Amended Complaint ¶ 10, 19. Thus, by the time the CAT Fund took control of the settlement discussions the delay damages time period had already been running. Therefore, PMSLIC should be held at least partly responsible for some part of the delay damages. Under the facts as pled, PMSLIC could be found partly culpable under indemnity principles. Accordingly, the preliminary objections of PMSLIC should have been overruled for the same reasons discussed above.

Therefore, we find that the Commonwealth Court committed an error of law in sustaining the CAT Fund's preliminary objections in the nature of a demurrer, and reverse the Commonwealth Court's order and remand for proceedings consistent with this opinion.

CAPPY, J., files a concurring opinion.

ZAPPALA, J., concurs in the result.

NIX, Former C.J., did not participate in the consideration or decision of this case.

CAPPY, Justice, concurring.

I concur in the result reached by the majority today. I write separately to stress that I believe that this disposition is appropriate as this case has advanced only to the preliminary objections stage. As noted by the majority, in reviewing an order granting preliminary objections, we must assume that

all material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are true. *AM/PM Franchise v. Atlantic Richfield,* 526 Pa. 110, 121, 584 A.2d 915, 921 (1990). Where any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the demurrer. *Id.* This is one of the more stringent standards of review which this court applies. I agree with the majority that when this standard is applied to the matter *sub judice,* it is indeed inappropriate to dismiss Appellants' complaints at this juncture.

I emphasize, however, that on the record available at this juncture Appellants have not *established* that the Pennsylvania Medical Catastrophe Loss Fund ("CAT Fund") controlled the settlement negotiations; this allegation is being assumed merely for the sake of disposing of the CAT Fund's preliminary objections. Accordingly, I concur in the result only.