

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-9-2005

# Livornese v. Med Protective Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2116

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Livornese v. Med Protective Co" (2005). *2005 Decisions.* Paper 1041.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1041

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 03-2116/2143/2410

_____

LAWRENCE I. LIVORNESE, M.D.;
DAVID M. RODGERS, M.D.;
CHESTNUT HILL CARDIOLOGY CONSULTANTS, LTD,

Appellants in No. 03-2116

v.

THE MEDICAL PROTECTIVE COMPANY,

Defendant-Third Party Plantiff/Appellant in No. 03-2410

v.

COMMONWEALTH OF PA MEDICAL PROFESSIONAL LIABILITY
CATASTROPHE LOSS FUND; JOHN H. REED, Director of
Commonwealth of PA Medical Professional Liability
Catastrophe Loss Fund,

Third Party Defendants/Appellants in No. 03-2143

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 01-cv-03124)
District Judge:  Berle M. Schiller

_____

Argued on 1/14/05

BEFORE:  ROTH and FISHER, <u>Circuit Judges</u>, and
IRENAS*, <u>District Judge</u>

(Filed: June 9, 2005)

*Honorable Joseph F. Irenas, United States District Court Judge for the District of New Jersey, sitting by designation.

Robert E. Slota, Esquire (Argued)
Joshua M. Matthews, Esquire
Law Offices of Robert E. Slota
801 Old Lancaster Road
Bryn Mawr, PA 19010

Counsel for Appellants in No. 03-2116

Mark R. Zolfaghari, Esquire (Argued)
Kevin H. Wright, Esquire
Kevin H. Wright & Associates
446 North Lane
P.O. Box 812
Conshohocken, PA 19428

Counsel for Appellants in No. 03-2410

Guy A. Donatelli, Esquire (Argued)
William H. Lamb, Esquire
Leslie Ann Miller, General Counsel
Kenneth J. Serafin, Deputy Chief Counsel
Zella Smith Anderson, Department Counsel
Lamb, Windle & McErlane
24 East Market Street
P.O. Box 565
West Chester, PA 19381

Counsel for Appellants in No. 03-2143

OPINION

ROTH, Circuit Judge:

## I. Factual Background and Procedural History

As the facts are well known to the parties, we give only a brief description of the facts and procedural posture of the case.

Sheila Gunn, executrix of the estate of Deborah Gunn, brought a medical malpractice suit in Pennsylvania state court against Lawrence I. Livornese, M.D., David M. Rodgers, M.D., Chestnut Hill Cardiology Consultants, Ltd. (Chestnut Hill) and other named parties. Gunn prevailed. On January 17, 1999,[1] the jury returned a verdict of $2,085,000. On May 17, 1999, the trial court entered judgment against the defendants in the amount of $2,798,924. This included the verdict amount and $713,924 in delay damages. *See Gunn v. Grossman*, 748 A.2d 1235, 1238 (Pa. Sup. 2000). During the conduct of the state trial court litigation, up to the jury's verdict, through the entry of judgment, and some time thereafter, attorneys for the Medical Protective Company (MPC) managed the litigation. MPC was the insurer of the defendants in the *Gunn* litigation, and MPC controlled the litigation proceedings in the state trial court action.

MPC and its insureds had previously executed two insurance contracts, each one having a face value amount of $200,000 in malpractice coverage. Some time after the

---

[1] There is some confusion in the record with regard to the date of the verdict. The Complaint and Third-Party Complaint state that it was on January 17, 1999, but other documents suggest that it was on January 27, 1999. *Cf., e.g., Gunn v. Grossman*, 748 A.2d 1235, 1245 (Pa. Super. 2000) (indicating that the date of the verdict was January 27, 1999).

jury returned its verdict and after the entry of judgment, MPC tendered $400,000 in payment on behalf of its insureds. MPC has taken the position that its payment of $400,000 was consistent with its contractual liability to its insureds, or, at the very least, not a breach of its obligation to act in good faith towards its insureds with regard to making timely and complete payments. Thereafter, attorneys for the Commonwealth of Pennsylvania Medical Professional Catastrophe Loss Fund ("CAT") managed the continuing state court action. The CAT was the excess liability insurer of the *Gunn* defendants. The exact date that MPC attorneys ceased controlling the litigation and CAT attorneys took over control of the litigation is unclear. Gunn prevailed on appeal. CAT petitioned for, but was denied, discretionary review by the Supreme Court of Pennsylvania.

Drs. Livornese and Rodgers and Chestnut Hill – defendants in the *Gunn* action – brought an action against MPC in the District Court for the Eastern District of Pennsylvania. They asserted two claims: (1) breach of contract and (2) bad faith[2] by MPC. MPC has impleaded CAT for contribution or indemnity.

On July 16, 2002, the District Court dismissed plaintiffs' bad faith claim. The

---

[2] 42 Pa. C.S.A. § 8371 ("In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions: (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%. (2) Award punitive damages against the insurer. (3) Assess court costs and attorney fees against the insurer.").

court reasoned that MPC's obligation to pay delay damages or postjudgment interest was guided by statute, citing the Healthcare Malpractice Services Act, 40 Pa. C.S.A. §1301.702(j), which provides in relevant part that the "basic insurance carrier or self-insurer shall be responsible for its proportionate share of delay damages and postjudgment interest [relative to the CAT fund]." The court further held that because this section was enacted *after* the contract between the plaintiffs and MPC had been executed, MPC had a potentially valid defense, grounded in the United States Constitution Contracts Clause and its analogue in the Pennsylvania state constitution, against paying delay damages or postjudgment interest beyond the $400,000 face value of the two insurance contracts. The District Court reasoned that, given the availability to MPC of a potentially valid defense, no claim for bad faith could survive scrutiny because under Pennsylvania law, a court will reject a bad faith claim where "*any* reasonable basis exist[s] for the insurer's conduct." Having dismissed plaintiffs' bad faith claim against MPC, the District Court subsequently dismissed as moot MPC's bad faith claim against CAT for derivative liability.

On March 7, 2003, the District Court found MPC liable to plaintiffs under the insurance contract for unpaid prejudgment and postjudgment interest and found CAT liable to MPC for postjudgment interest accruing post-August 24, 1999, on the $400,00 MPC paid into court following the molding of the verdict. The District Court reasoned, citing the terms of the insurance contract and Pa. R. Civ. P. 238(a)(2)(ii), that MPC was

5

liable for prejudgment interest – even beyond the face value of the insurance contract. With regard to postjudgment interest accruing post-August 24, 1999, the District Court reasoned, citing *Willet v. Penn. Medical Catastrophe Loss Fund*, 702 A.2d 850 (Pa. 1997), that the CAT should indemnify MPC for postjudgment interest accruing after August 24, 1999, because at that point CAT controlled the course of the litigation. Memorandum, at *7 (March 7, 2003). Briefing followed to determine the exact amount of CAT's liability to MPC. On April 11, 2003, the District Court clarified its prior order. The court found MPC liable to Plaintiffs in the amount of $189,112 as of April 11, 2003. The District Court amended its previous holding as follows: "it is clear that no party is taking the position that interest has accrued on the $400,000.00 [MPC] paid into court since the date it made that payment. As such, the CAT Fund is not liable to [MPC]." This was the District Court's final order from which this appeal was taken. Collectively, under the terms of these orders, CAT faces no liability.

## II. Jurisdiction and Standard of Review

District Court jurisdiction was founded in 28 U.S.C. § 1332(a)(1). Citizenship between the plaintiffs (the doctors and Chestnut Hill) and MPC is diverse. The amount in dispute, including the claim for punitive damages, exceeds $75,000 -- exclusive of interest and costs. The District Court's jurisdiction to hear the third-party complaint was based on supplemental jurisdiction. *See* 28 U.S.C. § 1367.

6

Plaintiffs filed their timely notice of appeal on April 17, 2003.  Similarly CAT[3] and MPC filed timely notices of appeal.  Our jurisdiction to hear this matter is founded in 28 U.S.C. § 1291.

On July 16, 2002, the District Court dismissed plaintiffs' bad faith claim under Fed. R. Civ. P. 12(b)(6).  A motion to dismiss tests the legal sufficiency of the allegations in the complaint.  The District Court should accept as true the allegations in the complaint and its attachments, as well as reasonable inferences construed in the light most favorable to the plaintiff.  *See, e.g., U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  We exercise plenary review of the District Court's dismissal.  *See, e.g., Lake v. Arnold*, 232 F.3d 360, 365 (3d Cir. 2000).  District Court determinations of the content of state law are reviewed de novo.  *Id*. at 365-66.

The District Court's October 1, 2002, memorandum and order, dismissing as moot MPC's third-party bad faith claim against CAT, were also adjudicated by the District Court under 12(b)(6) standards.  The same analysis applied to the July 16, 2002 memorandum and order applies here.

The District Court's memoranda and orders of March 7, 2003, and April 11, 2003,

_____

[3] Because we do not grant MPC any of the relief it sought, and because CAT is not seeking any affirmative relief in its appeal, but merely an affirmance of the decision below, we do not address whether or not CAT, the party which prevailed below, is in a position to appeal the District Court's final order.  *Cf*. Fed. R. App. P. 5(b)(1)(e) ("The petition [seeking appeal] must include ... the order, decree, or judgment *complained* of and any related opinion or memoranda.") (emphasis added).

awarded parties affirmative monetary relief. We, therefore, construe them as grants of summary judgment. "Our review of a district court's grant of summary judgment is plenary, and we apply the same standard that the District Court should have applied. Summary judgment is appropriate when there are no genuine issues of material fact and, viewing the evidence in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." *Emory v. AstraZeneca Pharmaceuticals LP*, 401 F.3d 174, 179 (3d Cir. 2005) (citation omitted); *see also* Fed. R. Civ. P. 56(c).

### III. Discussion

A panel of this Court recently held:

> The . . . contested issue in the instant case involves the interpretation of the scope of coverage of the insurance contract [under Pennsylvania law]. The interpretation of the scope of coverage of an insurance contract is a question of law properly decided by the court, a question over which [we] exercise[] plenary review.

*J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 360 (3d Cir. 2004) (quotation marks and brackets omitted). And further held:

> As a threshold matter, the task of interpreting a contract is generally performed by a court, rather than by a jury. The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where an insurance policy provision is ambiguous, it is to be construed against the insurer and in favor of the insured . . ..
>      Where, however, the language of an insurance contract is clear and unambiguous, a court is required to enforce that language. That is, a court must refrain from torturing the language of a policy to create ambiguities where none exist.

8

*Id.* at 363 (quotation marks, brackets, ellipses, and citations omitted).[4]

A.    MPC is Contractually Liable to Plaintiffs in Excess of the $400,000 it has already paid.

      1.    MPC is liable for delay damages.

The insurance contract between plaintiffs and MPC provides:

     *B*.    Upon receipt of notice the Company shall immediately assume its responsibility for the defense of any such claim.  Such defense shall be maintained until final judgment in favor of the Insured shall have been obtained or until all remedies by appeal, writ of error or other legal proceedings deemed reasonable and appropriate by the Company shall have been exhausted at the Company's cost and without limit as to the amount expended.

       . . .

     *E*.    Except as respects the cost of defense provided under paragraph *B* . . . the Company's liability is limited as follows:  Regardless of the number of (a) insureds or interests named in this contract or any endorsement or (b) persons or organizations who sustain damages or (c) claims made or suits brought on account of such injury or damage or (d) the number of policy years involved or *(e) the imposition of prejudgment interest or any final adjudication against the insured,* the Company's liability for damages shall not exceed the stated amount for any one occurrence [$200,000] and, subject to the same limit for each occurrence, the Company's total liability during any one policy year shall not exceed the stated annual aggregate [$600,000].

---

[4] Federal courts exercising diversity jurisdiction apply the choice of law rules of the state in which the District Court sat.  "This action was instituted in the [Eastern] District of Pennsylvania.  Under Pennsylvania choice of law rules, an insurance contract is governed by the law of the state in which the contract was made.  An insurance contract is 'made' in the state in which the last act legally necessary to bring the contract into force takes place." *J.C. Penney Life Ins.*, 393 F.3d 360-361 (quotation marks and citations omitted).  The District Court applied Pennsylvania law.  We agree.  We note that all parties briefed Pennsylvania's substantive contract law.

(italics added).

The contract, however, contained several riders. Significantly for the issue before us, the last rider deleted ¶ E, *supra*, and replaced it as follows:

> *E.* Except as respects the cost of defense provided under paragraph *B* ... the Company's liability is limited as follows: Regardless of the number of (a) insureds or interests named in this contract or any endorsement or (b) persons or organizations who sustain damages or (c) claims made or suits brought on account of such injury or damage, or (d) the number of policy years involved, the Company's liability for damages shall not exceed the stated amount for any one occurrence [$200,000] and, subject to the same limit for each occurrence, the Company's total liability during any one policy year shall not exceed the stated annual aggregate [$600,000].

It is clear that the only material change to the agreement effectuated by the rider was the deletion of the italicized language. Two such identical agreements are being contested in this litigation. MPC has taken the position that it is not liable under the terms of the insurance contract for prejudgment interest in excess of the stated amount: $200,000. Although this would have been true under the riderless agreement, it strains credulity to suggest that it is true under the finalized agreement. To adopt this position is to take the position that the rider effected no substantive change in the meaning of the agreement. We assume that the purpose of a rider is to change the meaning of the agreement. *Cf., e.g., Styer v. Harleysville Mut. Cas. Co.*, 38 Pa. D. & C. 2d 232, 335 (Pa. Com. Pl. 1965) (noting that a "rider changes the basic policy by amending one or more of its ... primary components").

MPC contends that we should interpret only the provisions actually agreed upon by

10

the parties, and not look to the riderless agreement to determine the effect of the rider on the meaning of the executed agreement. We note that MPC points to no Pennsylvania case or statute compelling us to blind ourselves in this matter. Indeed, if anything, Pennsylvania case law strongly suggests that we must take the exact opposite approach. The Supreme Court of Pennsylvania has held that "an insurance policy, like every other written contract, must be read in its entirety and the intent of the policy is gathered from consideration of the entire *instrument*." *Riccio v. American Republic Ins. Co.*, 705 A.2d 422, 426 (Pa. 1997) (emphasis added); *see also J.C. Penney Life Ins.*, 393 F.3d at 363 ("The goal of th[e] task [of interpreting an insurance contact under Pennsylvania law] is, of course, to ascertain the intent of the parties as manifested by the language of the written *instrument*.") (emphasis added). The word instrument connotes the physical document executed by the parties, not merely the in-force provisions of the agreement between them. *See* BLACK'S LAW DICTIONARY 719-20 (5th ed. 1979) (defining instrument as a "written document ... of a type which is in ordinary course of business transferred by delivery"). In the context of insurance litigation, this policy is particularly appropriate as the insurer generally controls the structure and wording of both the original instrument and its amended form. *Cf. Styer*, 38 Pa. D. & C. at 335 ("A given policy, as delivered to the insured, contains a vast torrent of words not a part of the company's agreement because nonapplicable provisions are not physically removed.").

To the extent that there remains any ambiguity that costs of defense include delay

11

damages or interest running to the time of the verdict, these ambiguities are construed against the drafter-insurer. *See Riccio*, 705 A.2d at 426; *cf. Incollingo v. Ewing*, 379 A.2d 79 (Pa. 1977) (holding that post-verdict interest is a cost of defense under the terms of an insurance contract similarly worded to the contracts in the instant litigation).

In his April 11, 2003 order, the District Judge ordered MPC to pay plaintiffs $136,931 in delay damages. *See* Pa. R. Civ. P. 238. We agree.

2.      MPC is liable for postjudgment interest.

Interest accrued on the $400,000 MPC owed plaintiffs between the date of the verdict and August 24, 1999, when MPC paid over $400,000 into the court. In his April 11, 2003 order, the District Judge determined that that amount was $13,677. Interest also accrued on the yet-unpaid delay damages running from the verdict until August 24, 1999. In his April 2003 order, the judge determined that that amount was $4,682. Postjudgment interest also continued to accrue from August 24, 1999, until April 11, 2003, on all unpaid amounts. In his April 2003 order, the judge determined that that amount was $33,822. We agree and note that the precise facts of this case are controlled by *Incollingo v. Ewing*, 379 A.2d 79 (Pa. 1977), which held on a similarly worded contract that postjudgment interest is a cost of defense. Of course, postjudgment interest continues to accrue on all unpaid amounts.

MPC has, however, raised the argument that, having lost control of the litigation at least as of August 24, 1999, it would be unfair to impose continuing postjudgment interest

on MPC at a time CAT conducted and controlled the litigation. This argument is plainly illogical. MPC's liability to plaintiffs was established with the verdict in January 1999. Moreover, entry of judgment was on May 17, 1999. Throughout that period, MPC owed plaintiffs, its insureds, both delay damages and postjudgment interest running from the verdict through May 17, 1999. MPC has not paid these amounts and these amounts were due at a time MPC, by its own admission, controlled the litigation. Interest continues to accrue precisely because they were not paid, not because of any conduct by CAT. MPC could have terminated all interest accruing during the period that CAT controlled the litigation simply by having paid the amount it owed. If MPC is now saddled with postjudgment liability running forward from the time CAT first had control of this litigation, it is because MPC failed to make a timely and complete payment to its insureds at a time when its liability had already been determined in state court proceedings,[5] at a time it had exclusive control of the litigation.[6]

---

[5] Nor can MPC take the position that the precise amount of its liability was not determined in state court proceedings. The District Court's computations as to MPC liability accruing up through August 24, 1999 made use of no secret information or information generated in post-1999 litigation. The same calculations of the extent of MPC's liability to plaintiffs could have been made by MPC at any time following the verdict of the *Gunn* jury.

[6] Arguing by analogy, MPC relies on *Willet v. Penn. Med. Catastrophe Loss Fund*, 702 A.2d 850 (Pa. 1997), as authority for bringing a contribution or indemnity action against the CAT. MPC acknowledges that *Willet* is not precisely on-point and "respectfully requests that this [C]ourt extend the holding in *Willet*." MPC Br. at 27. We decline the invitation. Such ambitious developments in Pennsylvania insurance law must come from Pennsylvania's courts.*See Vargas v. Pitman Mfg. Co*., 675 F.2d 73, 76 (3d Cir. 1982) (holding that "the [non-prevailing party in District Court proceedings] here is asking that

13

MPC's last argument is that, although the jury verdict was molded on May 17, 1999, in the amount of $2,798,924 when MPC still controlled the litigation, on August 27, 1999, when CAT controlled the litigation, CAT turned down a $2,400,000 offer to settle with the original *Gunn* plaintiffs. MPC has *not* taken the position that this $398,924 reduction would work a pro rata reduction in its delay damages and postjudgment interest, i.e., a reduction in liability to be shared by CAT and MPC in proportion to the original verdict. Rather MPC has taken the position that had CAT accepted this offer, then MPC's liability would fall to precisely $400,000, the face amount of its policy limits, the amount it had actually tendered. MPC cites no statute or case, nor does it make any showing or proffer any explanation why its liability would top-out at $400,000 had CAT accepted the August 1999 offer. We know of none.[7]

To summarize, we will affirm the District Court's determinations as to MPC's monetary liability to plaintiffs. We will deny MPC's appeal, seeking indemnification or contribution against CAT for delay damages and postjudgment interest.

---

we anticipate the birth of a state law doctrine in the womb of time, but whose birth is distant. We have been asked to deliver prematurely a new doctrine of Pennsylvania tort law, and as a federal court we are unwilling to do so.") (footnote omitted); *cf. Burris Chemical, Inc. v. USX Corp.*, 10 F.3d 243, 247 (4th Cir. 1993) ("Under *Erie Railroad v. Tompkins* ... the federal courts sitting in diversity rule upon state law as it exists and do not surmise or suggest its expansion."); LINDA MULLENIX ET AL., UNDERSTANDING FEDERAL COURTS AND JURISDICTION ¶ 15.19[3] (1998) (noting "policy against expanding state law" when a federal diversity court determines the content of state substantive law).

[7] As no argument was made for equitably sharing the "proceeds" between CAT and MPC, we do not address the question.

B.     Plaintiffs' Bad Faith Claim Against MPC.

The District Court held in its July 16, 2002, Memorandum and Order that MPC had a reasonable basis for denying the coverage demanded by its insureds and that, where such a reasonable basis exists, there is no viable claim for bad faith. *See* 42 Pa. C.S.A. § 8371; *see also Klinger v. State Farm Mut. Auto Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997).

The District Court, however, based its conclusion that there was a reasonable basis for denying coverage on the fact that 40 P.S. § 1301.702(j), holding that the basic insurance carrier or self-insurer is responsible for its proportionate share of delay damages and postjudgment interest *vis à vis* the CAT Fund, was enacted after the execution of the insurance contract here and thus did not apply to it. Our determination is to the contrary. Because our holding above – that MPC is liable for pre- and postjudgment interest – is not based on § 1302.702(j) but on the clear language of the insurance contract, pursuant to Pa. R. Civ. P. 238 (controlling prejudgment interest), 42 Pa. C.S.A. § 8101 (controlling postjudgment interest), and related case law, we conclude that there is a possibility of bad faith and of liability for delay damages. We will, therefore, reverse the District Court's dismissal of this claim and remand it to the District Court for further proceedings.

Finally, on October 1, 2002, the District Court, having already dismissed plaintiffs' bad faith claim against MPC, dismissed MPC's derivative bad faith claim against CAT as

15

moot. Because we have reversed the dismissal of plaintiffs' bad faith claim against MPC, MPC's derivative claim is no longer moot. However, we have already held in this opinion that CAT is not derivatively liable to MPC for any monies MPC owes the insureds under the terms of the insurance contracts. It stands to reason that should plaintiffs prevail in a bad faith claim arising from MPC's failure to pay, then CAT cannot be derivatively liable to MPC. *See also Finkbiner v. Med. Prof'l Liab. Catastrophe Loss Fund*, 546 A.2d 1327, 1329 (Pa. Cmwlth. 1988) (sustaining preliminary objections and dismissing bad faith claim against CAT in the absence of any contractual relationship between CAT and claimant), *aff'd*, 565 A.2d 157 (Pa. 1989) (per curiam). If there is any bad faith on these facts, it starts and stops with MPC. We will, therefore, affirm the dismissal on other grounds. *See Fairview Park Excavating Co., Inc. v. Al Monzo Const.*, 560 F.2d 1122, 1123 n.2 (3d Cir. 1977) ("We can affirm a district court's disposition on grounds other than those on which the district court relied.").

## IV. Conclusion

For the reasons elaborated above, we will affirm the District Court's October 1, 2002, order, March 7, 2003, order, and April 11, 2003, order.[8] We will reverse the

---

[8] CAT has asked us to reverse the March 7, 2003, District Court order which "preliminarily determined that the [CAT] Fund may be liable for post-judgment interest." As the District Court imposed no actual liability against CAT by the March 7, 2003, order, or by any other order, there is nothing for us to reverse. We construe CAT's request as an invitation to reverse the legal memorandum or reasoning of the District Court. We review only judgments, not opinions. *See, e.g.*, Edward A. Hartnett, *A Matter of Judgment, Not a Matter of Opinion*, 74 N.Y.U. L. REV. 123, 131 (2000) ("While the

District Court's July 16, 2002 order and remand that claim to the District Court for further proceedings.

primacy of judgments may be most obvious at the trial court level, it is evident at the appellate level as well. An appellate court reviews judgments, not opinions. Thus, when an appellate court disagrees with a lower court's opinion, but agrees with its judgment, it affirms rather than reverses.").