838 A.2d 692 (2003)
Samuel WALSH, Assignee of Henrietta Kubiak, Executrix of the Estate of Richard Kubiak, M.D., Appellant
v.
MEDICAL PROFESSIONAL LIABILITY CATASTROPHE LOSS FUND, Appellee.
Supreme Court of Pennsylvania.
Argued December 3, 2002.
Decided December 18, 2003.
*693 Keith S. Erbstein, David A. Yanoff, Philadelphia, for Samuel Walsh, Assignee of Henrietta Kubiak, Executrix of the Estate of Richard Kubiak, M.D., Appellant.
James C. Sargent, West Chester, for Medical Professional Liability Catastrophe Loss Fund, Appellee.
Before: ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

OPINION
Justice NIGRO.
The question presented in this appeal is whether the Commonwealth Court erred in granting summary judgment in favor of the Medical Professional Liability Catastrophe Loss Fund (the "CAT Fund" or "Fund"), thereby (1) relieving the CAT Fund of liability for delay damages above and beyond its $1,000,000 statutory cap on liability, (2) permitting the CAT Fund to take a credit against its liability for security posted by the primary insurance carrier, and (3) relieving the CAT Fund of liability for post-judgment interest. For the following reasons, we affirm, except to the extent that the court relieved the CAT Fund of its admitted liability for post-judgment interest on its pro rata share of the jury verdict.
Appellant Samuel Walsh was the plaintiff in a medical malpractice action against Dr. Richard Kubiak in the Court of Common Pleas of Philadelphia County.[1] Dr. Kubiak was insured by Physician's Insurance Company ("PIC") for up to $200,000. The CAT Fund had excess coverage of *694 $1,000,000.[2] Prior to trial, Walsh made a settlement demand of $1,200,000, but neither the CAT Fund nor PIC offered any money towards settlement.[3]
On September 16, 1991, a jury returned a verdict in favor of Walsh in the amount of $2,600,000. On April 7, 1993, the trial court molded the verdict to reflect delay damages under Pennsylvania Rule of Civil Procedure 238 in the amount of $2,454,325, for a total verdict of $5,054,325. The Estate, represented by PIC, filed a notice of appeal and petitioned for an emergency stay of execution of judgment, requesting that it be exempt from the requirement in Pennsylvania Rule of Appellate Procedure 1731 that it post security in the amount of 120% of the total judgment. After a hearing on May 7, 1993, the trial court ordered the Estate to post a bond of $737,301.86, representing twice the sum of PIC's 8% share of the judgment ($200,000), 6% post-verdict interest on that amount ($52,304.93) and 8% of the total delay damages ($116,346). PIC posted the security in cash, but was reimbursed by the CAT Fund for the amount over PIC's $200,000 share, i.e., $537,301.86. On appeal, the Superior Court affirmed the verdict, and this Court denied the Estate's Petition for Allowance of Appeal on February 2, 1996.
On March 22, 1996, the Prothonotary released to Walsh the funds it was holding as the supersedeas bond.[4] PIC took credit for $200,000 of that amount, plus the accumulated interest thereon, and the CAT Fund took credit for the remaining $537,301.86 and its interest. On December 31, 1996, the CAT Fund paid what remained of its $1,000,000 statutory liability, i.e., $462,698.
Thereafter, the Estate assigned to Walsh any claims that it had against the CAT Fund, and Walsh filed an action against the CAT Fund in the Commonwealth Court.[5] In that action, Walsh contended that the CAT Fund (1) improperly took credit for the cash bond posted by PIC, (2) should indemnify Walsh, as the Estate's assignee, for the delay damages on the entire verdict, and (3) should pay all of the post-judgment interest on the judgment. Both Walsh and the CAT Fund filed motions for summary relief under Pennsylvania Rule of Appellate Procedure 1532(b).[6] The Commonwealth Court denied *695 both motions on March 2, 1999, essentially concluding that the record needed further development before the relevant issues could be resolved.
After multiple depositions, both parties filed motions for summary judgment. On April 26, 2001, a single judge of the Commonwealth Court denied Walsh's motion, granted the CAT Fund's motion, and entered judgment in favor of the CAT Fund. Specifically, the court held that the CAT Fund (1) was not liable for delay damages above and beyond its $1,000,000 statutory obligation, (2) was entitled to take a $537,301.86 credit against its $1,000,000 statutory obligation as that was the amount that it had contributed to the security, and (3) was not liable for any post-judgment interest on the initial judgment. For the following reasons, we agree with the Commonwealth Court, except that we hold that the CAT Fund must pay post-judgment interest on its pro rata share of the judgment.
In the first of his three claims, Walsh contends that the Commonwealth Court erred in failing to require the CAT Fund to pay delay damages over and above its $1,000,000 statutory liability in light of this Court's decision in Willet v. Pennsylvania Medical Catastrophe Loss Fund, 549 Pa. 613, 702 A.2d 850 (1997).[7] We disagree.
As a general rule, the CAT Fund "may be liable for delay damages that are part of an award against a provider as a consequence of a claim for professional liability," but it will not be liable to the extent that those damages exceed the $1,000,000 statutory cap.[8]Lahav v. Main Line Ob/Gyn Assocs., P.C., 556 Pa. 245, 727 A.2d 1104, 1107 (1999). Nevertheless, in Willet, this Court held that the CAT Fund could be liable to an insured on an equitable indemnification claim for delay damages that exceed the amount of its statutory coverage, in circumstances in which the CAT Fund exercised exclusive control over the settlement negotiations and its refusal to tender its policy limit was the reason that the case did not settle. 702 A.2d at 854-55.
Willet involved claims of medical negligence against appellant Andrew J. Willet, M.D. and the appellant hospital at which Dr. Willet worked (the "Hospital"). Dr. *696 Willett had a professional liability insurance policy from Pennsylvania Medical Society Liability Insurance Company ("PMSLIC") that provided him with basic liability coverage of up to $200,000 per occurrence. Meanwhile, the Hospital had two policies with PHICO Insurance Company, a basic policy for $200,000 per occurrence and a $3,000,000 excess policy. Prior to trial, the plaintiff made a settlement demand of $3,000,000. In response, PMSLIC and PHICO each tendered their primary policy limits of $200,000, the CAT Fund tendered its $1,000,000 limit on behalf of the Hospital and $300,000 on behalf of Dr. Willett, and then PHICO offered $800,000 from the Hospital's excess coverage. However, the $2,500,000 settlement offer still fell short of the $3,000,000 demand, and the CAT Fund refused to tender any additional coverage. Accordingly, the case went to trial and the jury returned a verdict in favor of the plaintiff in the amount of $4,000,000. The trial court subsequently added delay damages in the amount of $508,902.
Dr. Willett and the Hospital brought an action against the CAT Fund, seeking indemnity for the delay damages that had accrued between the time that PMSLIC and PHICO tendered their primary policy limits and the time that the CAT Fund tendered its $1,000,000 on behalf of the Hospital. According to Dr. Willet and the Hospital, the CAT Fund was in exclusive control of the settlement negotiations during that time period, because it withheld coverage that, if offered, would have settled the case, so that no delay damages would have been imposed. This Court agreed that such allegations, if proven, were sufficient to establish a valid claim for indemnity, because under traditional indemnity principles, a loss will be shifted from "one who has been compelled, by reason of some legal obligation, to pay a judgment occasioned by the initial negligence of another who should bear it." 702 A.2d at 854 (citing Builders Supply Co. v. McCabe, 366 Pa. 322, 77 A.2d 368, 370 (1951); Restatement of Restitution § 76 (1972)). As Dr. Willet and the Hospital were alleging that they were required to pay delay damages "solely as a result of the CAT Fund's failure to conduct fair and reasonable negotiations," this Court concluded that they had stated a cause of action for indemnity. Id. at 855.
Applying Willet to the facts of this case, Walsh contends that the record establishes that the CAT Fund was in control of the failed settlement negotiations and thus, was wholly responsible for the accrual of delay damages. Alternatively, Walsh contends that, at a minimum, the record creates a genuine issue of material fact as to who controlled the litigation and that the Commonwealth Court therefore erred in summarily resolving that factual issue in favor of the CAT Fund.[9] We, however, agree with the Commonwealth Court that the record facts support an award of summary judgment in the CAT Fund's favor on the delay damages claim.
As an initial matter, it is undisputed that neither PIC nor the CAT Fund made an offer of settlement prior to trial in this case. Thus, unlike the situation in Willet, Walsh's primary insurance had not been exhausted such that the burden was shifted to the CAT Fund to contribute the next dollar amount to the settlement. See 40 *697 P.S. § 1301.701(d) (1995) (repealed) (CAT Fund pays settlements "to the extent that [the] health care provider's share exceeds his basic coverage insurance"). Walsh nevertheless contends that the CAT Fund was in exclusive control of the settlement as it was pursuant to the CAT Fund's direction that PIC did not tender its policy limits.[10] In this regard, Walsh primarily points to the testimony of Timothy McCarthy, Chairman of the Board of PIC, who testified that PIC desired to tender its policy limits prior to trial, but acceded to the CAT Fund's direction that it not do so.[11] R.R. at 636a-37a. According to McCarthy, the plaintiff had made a demand of $1,200,000, and PIC was prepared to pay $200,000, but the CAT Fund would not contribute its $1,000,000 of statutory coverage. R.R. at 635a-6a. Thus, McCarthy testified that it was the CAT Fund that controlled whether the case settled, at least in the immediate period prior to the case actually going to trial. R.R. at 640a.
However, like the Commonwealth Court, we do not believe that the mere fact that the CAT Fund may have dissuaded PIC from tendering its policy limits would support a finding that the CAT Fund was exercising exclusive control over the settlement negotiations. As the Commonwealth Court aptly explained:
PIC was under no obligation to the CAT Fund to withhold its coverage. The Act expressly recognizes that the basic coverage carrier may enter into its own settlement with a tort claimant. That PIC may have acceded to a request to refrain from offering its limits did not divest PIC of control over negotiations. The significant and admitted fact is that, unlike Willet, PIC never made any offer to the opposing party to settle. What Walsh ignores is the obvious fact that the withholding of PIC's own coverage, whether at the request of the CAT Fund or not, was an act by PIC of meaningful control of the negotiations.
4/26/01 Commw. Ct. Op. at 5 (footnote omitted) (emphasis in original). We therefore agree with the Commonwealth Court that the record does not support a conclusion that the CAT Fund had exclusive control over the settlement negotiations. Accordingly, the Commonwealth Court correctly determined that there was no basis on which to hold the CAT Fund liable for delay damages that exceeded its *698 $1,000,000 statutory liability.[12]
In his second claim, Walsh contends that the Commonwealth Court erred in permitting the CAT Fund to apply a portion of the posted cash security to its $1,000,000 statutory obligation. Specifically, Walsh argues that because the security was posted by PIC, not the CAT Fund, it could only be used to satisfy PIC's obligation to the Estate. In support of this assertion, Walsh points to the court order setting the amount of the appeal bond, which stated:
It is therefore ordered and decreed that the Defendant is required to post a bond in the sum of ... $737,301.86 ..., which includes the Defendant/insured's coverage under the Pennsylvania Insurance Claim (PIC) of ... $200,000 ..., which amounts to eight percent (8%) of the verdict, plus ... $116,346 ..., which amounts to eight percent (8%) of the assessed delay damages pursuant to Pennsylvania Rule of Civil Procedure 238, plus ... $52,304.93 ..., which reflects six percent (6%) interest on the combined $200,000 coverage and the $116,346.00 for the period 9/16/91 to 5/3/93 (582 days), for a total sum of ... $368,650.93.... The Court has then doubled the amount for a total security bond requirement of ... $737,301.86....
Based on this order, Walsh contends that the supersedeas "solely represented PIC's obligation to pay delay damages and interest, on its pro rata share of the judgment." Walsh Brf. at 12 (emphasis in original). He further asserts that the bond was "solely PIC's money" and that the "CAT Fund refused to contribute anything to the security." Id. at 13 (emphasis in original).
Walsh's argument, however, ignores the record fact that the CAT Fund did, in fact, reimburse PIC for $537,301.86 of the posted security, see McCarthy Depos. Testim., R.R. at 61b-62b, and therefore, was entitled to a credit against its liability in that amount. Moreover, contrary to Walsh's apparent belief, the trial court's conclusion that a $737,301.86 bond was appropriate did not automatically increase PIC's liability to the Estate to $737,301.86. Although the court calculated the $737,301 by adding delay damages and post-judgment interest to PIC's $200,000 liability, there is no indication that it did so based on a legal conclusion that PIC was actually liable for such delay damages and post-judgment interest.[13] Moreover, the *699 fact that the court doubled the sum of the coverage limit, delay damages and interest to reach the security requirement makes it crystal clear that the court did not intend the amount of the bond to be coterminous with PIC's liability. Accordingly, we affirm the Commonwealth Court order insofar as it permitted the CAT Fund to apply a portion of the posted cash security to its statutory obligation.
In his third and final claim, Walsh argues that the Commonwealth Court erred in "exonerating the CAT Fund from the payment of any post judgment interest." Walsh Brf. at 48. His argument in this regard is two-fold. First, he contends that the court erred in failing to require the CAT Fund to pay post-judgment interest on its $1,000,000 liability given both the decisions of the Commonwealth Court in Montgomery Hospital v. Medical Professional Liability Catastrophe Loss Fund, 668 A.2d 221 (Pa.Commw.1995) ("Montgomery Hospital I"), and Montgomery Hospital v. Medical Professional Liability Catastrophe Loss Fund, 686 A.2d 432 (Pa. Commw.1996) ("Montgomery Hospital II"), and the CAT Fund's concession that it was liable for such interest. Second, he argues that the court should have required the CAT Fund to pay post-judgment interest not only on the $1,000,000 liability, but on the remainder of the judgment as well. While we conclude that the CAT Fund was not liable for interest on the entire judgment, we agree with Walsh that the Commonwealth Court erred in failing to hold the CAT Fund responsible for interest on its $1,000,000 share.
In Montgomery Hospital I, the Commonwealth Court specifically held that the CAT Fund is liable for interest on its portion of a judgment against a provider even if the interest results in liability exceeding the $1,000,000 statutory limit of liability. 668 A.2d at 223; see also Montgomery Hospital II, 686 A.2d at 436. Significantly, the CAT Fund does not dispute its liability for such interest from the date of the verdict to the date of payment, apparently recognizing that the Montgomery Hospital cases are controlling. In fact, the CAT Fund's counsel specifically stated to the Commonwealth Court at oral argument on the cross-motions for summary judgment that the CAT Fund is "clearly ... liable for post-judgment interest on the amount of our coverage...." 1/24/01 Hrg. Transcr. at 33. Likewise, the CAT Fund concedes in its brief to this Court that it will pay "its proportionate share" of the post-judgment interest for the "specified time period." CAT Fund Brf. at 29. Nevertheless, the Commonwealth Court denied Walsh's motion for summary judgment in its entirety, including that piece which requested interest on the $1,000,000 liability. Given the CAT Fund's concession and the clear legal precedent in this regard, it was clearly erroneous for the court to deny interest on the $1,000,000 liability.[14] Accordingly, we reverse *700 that portion of the Commonwealth Court's order and remand the case to the Commonwealth Court for calculation of the amount of post-judgment interest owed on the $1,000,000 and entry of judgment in favor of Walsh in the appropriate amount.
In contrast, we do not believe that the Commonwealth Court erred in denying Walsh's claim for post-judgment interest on the remainder of the judgment. The only authority Walsh cites in support of such relief is Incollingo, 474 Pa. 527, 379 A.2d 79 (1977), which merely held that a primary insurer that had contracted with its insured to pay post-judgment interest on verdicts was liable for all interest accruing on a verdict after it was entered. Id. at 84 ("We hold ... that when an insurance company contracts with an insured to `pay ... all interest accruing after entry of judgment,' Pennsylvania law requires that the defendant pay interest computed from the date of verdict to the entry of the judgment and interest on the amount of the judgment entered thereafter.") Moreover, we emphasized in that case that our conclusion that the insurer was liable for interest on the entire judgment, not only its pro rata share, was based on the language of the insurance contract, which in no way limited the insurer's "interest liability... to that portion of the judgment covered by its policy." Id. at 85. Accordingly, contrary to Walsh's contention, Incollingo did not create a general rule that all insurers are required to pay interest on more than their pro-rata share of judgments, and it certainly cannot be read to impose such an obligation on the statutorily-created CAT Fund. We therefore agree with the Commonwealth Court that Incollingo simply "has no application to this case," 4/26/01 Commw. Ct. Op. at 6, and this aspect of Walsh's claim for interest fails.
In sum, we conclude that the Commonwealth Court properly entered judgment in the CAT Fund's favor on Walsh's claims regarding delay damages, the credit for PIC's posted security, and the post-judgment interest on the portion of the judgment that was not attributed to the Fund. However, we reverse the court's order insofar as it entered judgment against Walsh on his claim for post-judgment interest on the Fund's pro rata share of the judgment. Accordingly, we remand to the Commonwealth Court to permit it to calculate the interest owed and enter judgment in Walsh's favor in that amount.
Former Chief Justice ZAPPALA did not participate in the decision of this case.
NOTES
[1] Dr. Kubiak died two days after being served with plaintiff's complaint. Mrs. Kubiak, as executrix of the Estate of Dr. Kubiak (the "Estate"), was substituted as the defendant in the action.
[2] At the time, the Pennsylvania Health Care Services Malpractice Act (the "Act"), Act of October 15, 1975, P.L. 390, 40 P.S. §§ 1301.101-1301.106, required the CAT Fund to provide excess coverage of $1,000,000. 40 P.S. § 1303.701(d) (1995) (repealed). In 1996, the General Assembly amended the Act to, among other things, increase the CAT Fund's limit of liability, see Act of November 26, 1996, P.L. No. 135, No. 135, but due to the timing of this case, those amendments are not applicable here. Likewise, although the General Assembly repealed most of the Act and adopted the Medical Care Availability and Reduction of Error Act ("MCARE Act") in 2002, Act of March 20, 2002, P.L. 154, No. 13 (40 P.S. §§ 1303.101-1303.910), the MCARE Act does not apply to this case.
[3] Prior to and during trial, PIC provided the defense for the CAT Fund as was required by Section 702 of the Act. 40 P.S. §§ 1301.702(d), (e) (1995) (repealed); see also 40 P.S. § 1303.713(c), (e).
[4] The Prothonotary paid Walsh a total of $829,105.84, which represented the original amount deposited, plus accumulated interest.
[5] In addition, the Estate assigned to Walsh any claims that it had against PIC. As a result, Walsh filed a bad faith action against PIC, seeking delay damages and post-judgment interest. That action, however, was dismissed as untimely. Walsh v. PIC, No. 03402 PHL 1996, 704 A.2d 1129 (Pa.Super.1997).
[6] Specifically, Walsh sought an order requiring the CAT Fund to pay the "balance" of its statutory coverage, i.e., $537,301.86, delay damages of $1,454,325.80, post-judgment interest on the entire verdict calculated through September 15, 1998, in the amount of $1,702,816.85, and post-judgment interest in the amount of $666.46 per day thereafter until the balance was paid in full.
[7] Walsh also argues that the CAT Fund voluntarily assumed liability for delay damages by virtue of its enactment of Bulletin # 49. Bulletin # 49, however, states only that "Effective September 1, 1989, the fund will pay those delay damages in excess of the primary carrier's limit of liability subject to certain limitations and restrictions." Reproduced Record ("R.R.") at 584a (emphasis added.) Moreover, the Bulletin also states that "payment of any delay damages by the Fund cannot cause the Fund to exceed its statutory limit of $1,000,000 per occurrence" and that "[t]he fund reserves its right to review the assessment of delay damages on a case-by-case basis." Id. Accordingly, the Commonwealth Court properly concluded that "Bulletin # 49 does not direct that the Fund will always pay delay damages. To the contrary, the Fund expressly reserved the right to review the assessment of delay damages on a case by case basis." 4/26/01 Commw. Ct. Op. at 11.
[8] As stated above, see supra note 2, the 1996 amendments to the Act and the subsequent MCARE Act do not apply here, but it is worth noting that the 1996 amendments included a provision stating that "[d]elay damages and postjudgment interest applicable to the [CAT Fund's] liability in a case shall be paid by the fund and shall not be charged against the insured annual aggregate limits." 40 P.S. § 1301.702(j) (1999) (emphasis added) (repealed). The MCARE Act has a virtually identical provision. See 40 P.S. § 1303.714(h).
[9] On a motion for summary judgment, the court must view the evidence of record in the light most favorable to the nonmoving party and enter judgment only if there are no genuine issues of material fact and the right to judgment is clear as a matter of law. Hennessey v. Pennsylvania Bd. of Pardons, 655 A.2d 218, 219 (Pa.Commw.1995); Marks v. Tasman, 527 Pa. 132, 589 A.2d 205 (1991); Pa. R.A.P. 1532(b).
[10] In the alternative, Walsh argues that the Commonwealth Court erred in requiring him to prove that the CAT Fund had exclusive control over the negotiations in order to establish the CAT Fund's liability for delay damages. According to Walsh, Willet "left for another case and another day" whether control that was not exclusive could suffice to establish a right to indemnity. Walsh Brf. at 32. Thus, Walsh argues that we should now hold that indemnity against the CAT Fund can rest on proof of shared control. However, we decline to do so. Not only would such a rule lead to extensive and protracted litigation regarding the exact extent to which the CAT Fund controlled often complex and nuanced settlement negotiations, but it would also pose an excessive and unjustifiable threat to the General Assembly's chosen cap on the CAT Fund's liability.
[11] For example, Mr. McCarthy testified as follows:

Q: In this particular case, was there a reason that you did not formallyand by formally, I mean in some written communicationsend a letter to the CAT fund, in essence, saying here's our $200,000.00, we're tendering it to you. The ball's in your court. You do what you want in reference to the Walsh case?
A: Well, we didn't do it because [the CAT Fund] had asked me not to. That they did not want a tender.
Q: Let me ask you the reverse question. Had he asked you to tender, would you have done that?
A: Yes, I would have....
R.R. at 636a-37a.
[12] As an alternative basis for its holding that the CAT Fund was not liable for delay damages above its $1,000,000 cap, the Commonwealth Court noted that only a health care provider who has actually been forced to pay delay damages can bring an equitable indemnity action to recover such damages from it insurer. 4/26/01 Commw. Ct. Op. at 6 (citing, e.g., McClure v. Deerland Corp., 401 Pa.Super. 226, 585 A.2d 19 (1991); Beary v. Container General Corp., 390 Pa.Super. 53, 568 A.2d 190-93 (1989)). Thus, the court found that where, as here, the provider has not paid any of the delay damages for which indemnification is sought, an equitable indemnification claim is not cognizable. Id. Although Walsh takes issue with this alternate ground for the Commonwealth Court's holding, we need not address that argument here, as we agree with the Commonwealth Court that the facts of record do not support a conclusion that the CAT Fund controlled the settlement negotiations such that it could be held liable pursuant to Willet.
[13] Even if the court had concluded that PIC was liable for delay damages, that conclusion would have been erroneous because the law at the time was clear that liability for delay damages above and beyond the policy limits lay with the defendant (here, the Estate) absent a successful separate action to shift such liability to the insurer. See Lahav, 556 Pa. 245, 727 A.2d 1104. As Walsh had not yet prevailed in any such action here, there was simply no basis for the court to summarily saddle PIC with liability for the delay damages.
[14] The CAT Fund posits in its brief that the court did not rule that the CAT Fund is not liable for any post-judgment interest, but only that it was not liable for additional interest beyond that on its pro rata share of the judgment. CAT Fund Brf. at 29. However, the Court specifically stated that:

Incollingo [v. Ewing, 474 Pa. 527, 379 A.2d 79 (1977)], affirmed the longstanding rule that absent an insurer's agreement to do so, an insurer is not liable for interest in excess of its policy limits. Liability for interest in Incollingo was found in the contracts of insurers who had participated in the defense. The CAT Fund did not provide defense for the claim against Kubiak, nor was there any contractual agreement between the CAT Fund and Kubiak.
4/26/01 Commw. Ct. Op. at 6. Accordingly, it appears that the court intentionally concluded that Walsh was entitled to no post-judgment interest from the CAT Fund. As stated above, this conclusion is not only inconsistent with the Montgomery Hospital cases, but is also unmindful of the CAT Fund's admission of liability.