858 A.2d 620 (2004)
David W. CARUSO, Jr., an Incapacitated Person by David W. Caruso, Sr., and Geraldine Anne Caruso, Guardians of the Estate and Person of David Caruso, Jr., and as Assignees of Steven Greensweig, M.D., Edward G. Hamaty, Jr., D.O. and William Antonelli, M.D., Appellants,
v.
The MEDICAL PROFESSIONAL LIABILITY CATASTROPHE LOSS FUND, John H. Reed, Director of the Medical Professional Liability Catastrophe Loss Fund, Medical Inter-Insurance Exchange, Appellee.
Superior Court of Pennsylvania.
Argued March 9, 2004.
Filed September 8, 2004.
*621 Robert Ross, Philadelphia, for Caruso, appellant.
Robert R. Reeder, Philadelphia, for Medical Inter-Insurance, appellee.
Before: BOWES, McCAFFERY and POPOVICH, JJ.
OPINION BY POPOVICH, J.:
¶ 1 David Caruso, Jr., and his legal guardians, David Caruso, Sr., and Geraldine Anne Caruso, (collectively "Appellants") appeal the judgment entered on their behalf in the Court of Common Pleas of Philadelphia County. Appellants allege that the trial court erred by denying Appellants' motion to mold the verdict and concluding that Appellee Medical Inter-Insurance Exchange[1] was liable to Appellants for post-judgment interest only with respect to the amount of the judgment that remained unpaid by Appellee. Upon review, we affirm.
¶ 2 The principal facts of this case are not in dispute. Appellants brought suit against a number of physicians and hospitals as a result of injuries sustained by Appellant David Caruso, Jr., which left him permanently brain damaged and totally incapacitated. On August 4, 2000, the case proceeded to trial, and, August 22, 2000, prior to entry of the verdict, Appellants entered into a settlement agreement with the following defendants: Stephen Greensweig, D.O., Edward G. Hamaty, D.O., and William Antonelli, M.D. After the settlement agreement was reached, Drs. Hamaty and Antonelli assigned to Appellants their indemnification rights under the insurance policies they held with Appellee. Under the terms of the settlement agreement, Appellee was to pay Appellants $300,000.00, the full limit of liability under each of the doctors' insurance policies, for an aggregate payout amount of $600,000.00.
¶ 3 Later that day, a verdict was entered against the remaining defendants in the amount of $49,594,684.00. After the *622 verdict was entered, the trial court, in accordance with a joint tortfeasor release executed between the parties, molded the verdict to $24,797,342.00. Appellants filed a petition for delay damages, which the trial court granted and added $3,383,225.00 in delay damages to the verdict. On August 31, 2000, judgment was entered in Appellants' favor in the amount of $28,180,567.00. Thereafter, on September 11, 2000, pursuant to the settlement agreement, Appellee paid $600,000.00 to Appellants. Neither party appealed to this Court following the judgment.
¶ 4 On January 25, 2001, five months after the jury verdict, Appellants filed a motion for leave to file an amended complaint seeking to add Appellee and the Medical Professional Liability Catastrophe Loss Fund (the CAT Fund) as additional defendants in the underlying negligence suit. Over the objection of Appellee and the CAT Fund, the trial court granted Appellants' motion on March 12, 2001. Appellants filed an amended complaint on April 9, 2001, seeking, inter alia, recovery of the entire amount of delay damages and post-judgment interest from Appellee and the CAT Fund based upon a theory of joint and several liability.[2]
¶ 5 After Appellants filed the amended complaint, Appellants, Appellee, and the CAT Fund filed cross-motions for summary judgment. Appellants contended that pursuant to Appellee's insurance policies and the then-existing Healthcare Services Malpractice Act, 40 P.S. § 1301.101, et. seq.,[3] Appellee was jointly and severally liable (with the CAT Fund) for the entire amount of assessed delay damages ($3,383,225.00) and the ensuing post-judgment interest accruing on the entire verdict. In response, Appellee contended that neither the Healthcare Services Malpractice Act nor the terms of their insurance policies with the physician-defendants required payment of delay damages or post-judgment interest.
¶ 6 Following oral argument on April 8, 2003, the trial court found that Appellee and the CAT Fund were not jointly and severally liable for delay damages and post-judgment interest on the entire verdict. Rather, the trial court found that, under the Healthcare Services Malpractice Act and its successor, MCARE, Appellee and the CAT Fund were liable for delay damages and post-judgment interest, but that each party was liable for delay damages and post-judgment interest only in proportion to their respective liability on the underlying verdict. Therefore, the trial court concluded that Appellee's share of liability for delay damages was $81,840.20.[4]
¶ 7 At the trial court's direction, Appellants filed a motion to mold the verdict on April 21, 2003. Appellants' motion also sought clarification of the trial court's April 8, 2003 order with regard to whether, pursuant to the insurance policies, Appellee was liable for post-judgment interest on the entire verdict because Appellee failed to make full payment on the assessed delay damages prior to the trial court's order of April 8, 2003. In response, Appellee contended that it was *623 liable only for post-judgment interest on the unpaid balance of the verdict, namely its proportionate share of delay damages. Thereafter, on May 13, 2003, Appellee paid Appellants $81,840.20 (its assessed delay damages) plus post-judgment interest on the delay damages for the period between August 22, 2000, through May 13, 2003.
¶ 8 On June 3, 2003, the trial court denied Appellants' motion to mold the verdict and found that Appellee had satisfied its obligation by paying post-judgment interest on the unpaid delay damages. Appellants filed a notice of appeal to this Court from the trial court's June 3rd order. The trial court ordered Appellants to file a concise statement of matters complained of on appeal, and Appellants complied. However, the appeal could not move forward because Appellants failed to praecipe for the entry of judgment. Therefore, Appellants filed a praecipe for the entry of judgment on August 11, 2003, and judgment was entered on that date.[5] Following the entry of judgment, on October 28, 2003, the trial court filed a Pa. R.A.P.1925(a) opinion that addressed Appellants' matters.
¶ 9 As stated above, Appellants contend that the trial court erred by refusing to assess post-judgment interest against Appellee on the entire amount of the verdict because Appellee was required by its contract of insurance to pay delay damages following settlement, and, therefore, under the terms of the insurance contracts, Appellee's failure to pay delay damages promptly at settlement rendered it liable for post-judgment interest on the entire verdict.
¶ 10 Appellants' claim requires us to consider whether the trial court applied improperly the Healthcare Services Malpractice Act and its successor, MCARE, in concluding that Appellee was liable for delay damages and post-judgment interest only in proportion to its underlying settlement liability. This claim presents this Court with a question of law, and, therefore, our scope of review is plenary. See Wojdak v. Greater Philadelphia Cablevision, 550 Pa. 474, 488, 707 A.2d 214, 220 (1998). As this claim presents a question of statutory interpretation, our standard of review is limited to determining whether the trial court committed error in its application of the law. Stone & Edwards Ins. v. Commonwealth, Dep't of Ins., 538 Pa. 276, 281 n. 2, 648 A.2d 304, 307, n. 2 (1994).
¶ 11 Our goal in statutory interpretation is to "ascertain and effectuate the intention of the General Assembly[,]" and we strive to give effect to all the provisions in a statute. 1 Pa.C.S.A. § 1921(a). Accordingly, we are guided in our interpretation by the principal stated purpose of the Healthcare Services Malpractice Act and its successor, MCARE, i.e., to assure the availability of reasonably-priced medical professional liability insurance in this Commonwealth and to insure that persons injured as a result of medical malpractice obtain prompt adjudication of and compensation for their claims. See Milton S. Hershey Med. Ctr. of the Pa. State Univ. v. Commonwealth, 788 A.2d 1071, 1078 (Pa.Commw.2001) (discussion of purpose of Healthcare Services Malpractice Act); see also 40 P.S. § 1303.102 (discussion of purpose of MCARE act).
¶ 12 We consider first whether the provisions of the Healthcare Services Malpractice Act and its successor, MCARE, were applicable to the present case. Reference to the insurance policies in question *624 indicates that Drs. Hamaty and Antonelli participated in the CAT Fund and contributed to the CAT Fund through premiums paid as part of their insurance policies with Appellee. See Optimal Protection Policy "Declarations," 1/01/1997. As stated explicitly in the insurance policies' declarations page, "the [CAT Fund] applies in excess of [the express limits of liability in the insurance policy, i.e., $300,000.00 per medical incident, and $900,000.00 aggregate during the entire policy period]." Id. Because the verdict in this case far exceeded these policy limitations, we are satisfied that the trial court concluded correctly that the provisions of Healthcare Services Malpractice Act and its successor, MCARE, were applicable to the present case.
¶ 13 Next, we consider whether the insurance policies in question violate the Healthcare Services Malpractice Act and its successor, MCARE. The insurance polices are identical and they state, in pertinent part, the following:
IV. Limits of Liability
* * *
(e) [Appellee's] liability for accrued prejudgment interest for each medical incident[6] is limited to the amount which bears the same ratio to the total accrued pre-judgment interest as [Appellee's] liability for damages other than accrued pre-judgment interest bears to the total damages other than accrued pre-judgment interest.
* * *
VII. Supplementary Payments
In addition to the limit of liability stated in the declarations as "each medical incident," [Appellee] will make supplementary payments for each medical incident as provided below.
(a) The limit of liability stated in the declaration as "aggregate  policy period" is the total limit of [Appellee's] liability for damages due to all medical incidents which occur during the policy period.

(b) [Appellee] is not obligated to apportion damages among claimants or among medical incidents which occur during the policy period.
(c) Subject to the foregoing limitations, the supplementary payments which [Appellee] will make are:
(1) all expenses incurred by [Appellee], all costs taxed against the insured in any suit defended by [Appellee,] and all interest on any judgment therein which accrues after entry of the judgment and before [Appellee] has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of [Appellee's] liability thereon[.]
Optimal Protection Policy, 1/1/1997, at 3, section IV; see also id. at 4, section VII.
¶ 14 Appellants argue that Appellee failed to tender delay damages pursuant to section IV(e) of the policy immediately after the trial court granted Appellants' petition for delay damages, and, as such, Appellee failed to pay, tender, or deposit with the trial court Appellee's entire portion of liability (settlement figure plus delay damages). Therefore, Appellants argue, that pursuant to section VII(c)(1) of the insurance policy, Appellee was liable for post-judgment interest on the entire $28,180,567.00 verdict, i.e., approximately $4.5 million dollars in post-judgment interest, *625 rather than post-judgment interest on the unpaid portion of the verdict (the delay damages assessed by the trial court on April 8, 2003). We disagree.
¶ 15 It is a well-settled principle of law in this Commonwealth that stipulations in a contract of insurance that conflict with, or are repugnant to a statutory provision that is applicable to and, consequently, forms a part of, the insurance contract, must yield to the statutory provision and are invalid, because contracts cannot change existing statutory laws. Allwein v. Donegal Mut. Ins. Co., 448 Pa.Super. 364, 671 A.2d 744, 752 (1996) (en banc). As we have already found that the Healthcare Services Malpractice Act and its successor, MCARE, apply to the present case, we direct Appellants to Section 1301.702(j), 40 P.S., of the Healthcare Services Malpractice Act (now codified at Section 1303.714(h), 40 P.S., of MCARE), which states, in pertinent part, the following:
Delay damages and post[-]judgment interest. Delay damages and post[-]judgment interest applicable to [the CAT fund's or the MCARE fund's] liability on a medical professional liability claim shall be paid by the [CAT fund or the MCARE fund] and shall not be charged against the participating health care provider's annual aggregate limits. The basic coverage insurer or self-insured participating health care provider shall be responsible for its proportionate share of delay damages and post[-]judgment interest.

40 P.S. 1301.702(j) (now codified at 40 P.S. 1303.714(h)) (emphasis added).
¶ 16 Therefore, a plain reading of the above dictates that both the Healthcare Services Malpractice Act and its successor, MCARE, require the basic coverage insurer, in this case Appellee, to shoulder a proportionate share of the liability for delay damages and post-judgment interest in cases where the medical care provider seeks relief from the CAT Fund or the MCARE Fund. See 40 P.S. 1301.702(j) (now codified at 40 P.S. 1303.714(h)). A comparison of Section 1301.702(j), 40 P.S., (now codified at Section 1303.714(h), 40 P.S.) with Appellants' preferred construction of the insurance policies indicates that construing sections IV(e) and VII(c)(1) of the insurance policies in Appellants' fashion would violate both statutes; requiring Appellee to pay post-judgment interest in the amount of $4.5 million dollars as a result of its failure to immediately pay assessed delay damages of $81,840.20 arising from an aggregate $600,000.00 settlement cannot, in any sense, be proportionate. See 40 P.S. 1301.702(j) (now codified at 40 P.S. 1303.714(h)). Therefore, Appellants' construction of section VII(c)(1) is repugnant to both the Healthcare Services Malpractice Act and its successor, MCARE, and must fail. Allwein, 671 A.2d at 752. Accordingly, we are satisfied that the trial court did not err when it concluded that Appellee was liable for post-judgment interest only in proportion to its underlying liability in this case, i.e., $600,000.00 aggregate settlement plus assessed delay damages.[7] Therefore, as Appellee tendered its full settlement liability ($600,000.00) prior to entry of the verdict, we are satisfied that the trial court concluded properly that Appellee was required *626 to pay post-judgment interest only in proportion to the amount of delay damages that remained unpaid by Appellee. Cf. Johnson v. Singleton, 442 Pa.Super. 206, 658 A.2d 1372, 1374-75 (1995) (stating that plaintiff is entitled to post-judgment interest on unpaid portion of molded jury verdict, accruing from date of verdict) (emphasis added).
¶ 17 Further, a review of the considerations underlying both the Healthcare Services Malpractice Act and its successor, MCARE, indicates that requiring an insurer to pay post-judgment interest beyond its proportionate share of liability in a case that implicates the Healthcare Services Malpractice Act and MCARE is contrary to the public policy of this Commonwealth. As our Supreme Court held in Paylor v. Hartford Ins. Co., 536 Pa. 583, 640 A.2d 1234 (1994):
Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. It is only when a given policy is so obviously for or against the public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in declaring what is or is not in accord with public policy.
Paylor, at 586-87, 640 A.2d at 1235.
¶ 18 As stated above, the Healthcare Services Malpractice Act and its successor, MCARE, were enacted to make available professional liability insurance at a reasonable cost and to ensure prompt resolution of and prompt recovery from medical malpractice claims. See Milton S. Hershey Med. Ctr., 788 A.2d at 1078 (discussion of purpose of Healthcare Services Malpractice Act); see also 40 P.S. § 1303.102 (discussion of purpose of MCARE act). Clearly, this goal would be violated by assigning to an insurer liability for post-judgment interest which is grossly disproportionate to the insurer's underlying liability to the insured and which is contrary to the express language of each statute. Such a decision would merely have the effect of increasing insurance costs, and is therefore repugnant to the policy of both the Healthcare Services Malpractice Act and its successor, MCARE. Therefore, we are satisfied that the trial court did not err in its application of the Healthcare Services Malpractice Act and its successor, MCARE. Accordingly, we are satisfied that its computation of post-judgment interest was correct, and we conclude that Appellants' argument fails.
¶ 19 Judgment affirmed.
NOTES
[1] We note that the now-defunct Medical Professional Liability Catastrophe Loss Fund, and its former director, John H. Reed, are not parties to the present appeal. Therefore, throughout the body of this Opinion, we will refer to Medical Inter-Insurance Exchange solely as "Appellee."
[2] In their amended complaint, Appellants also sought relief against Appellee based on a statutory "bad faith" insurance claim. See, e.g., 42 Pa.C.S.A. § 8371. This claim was dismissed with prejudice by stipulation of the parties.
[3] The Healthcare Services Malpractice Act has been repealed, and its provisions have been amended and re-codified as the Medical Care Availability and Reduction of Error Act (MCARE), 40 P.S. § 1303.101, et. seq., 2002, March 20, P.L. 154, No. 130.
[4] The trial court did not calculate the amount of Appellee's liability for post-judgment interest. See Trial court order, 4/8/2003, at 39-40.
[5] We deem Appellants' premature appeal timely filed on August 11, 2003, the date judgment was entered. See Pa.R.A.P. 905(a).
[6] The policies define "medical incident" as "a single act or omission or a series of related acts or omissions in the rendering of or failure to render professional services to any one person." Optimal Protection Policy, 1/1/1997, at 3, section V.
[7] We distinguish our holding in the present case from our Supreme Court's holding in Incollingo v. Ewing, 474 Pa. 527, 379 A.2d 79 (1977). In Incollingo, our Supreme Court was presented with a provision in an insurance contract similar to section VII(c)(1) in the present case. See Incollingo, at 538, 379 A.2d at 85. Our Supreme Court held that, based on the language of the insurance contract, the insurer was liable for post-judgment interest on the entire verdict not merely its pro-rata share. Id., at 538, 379 A.2d at 85. Nevertheless, Incollingo had its genesis as an appeal from an order in a medical malpractice case that denied a petition for post-judgment interest that predated the passage of the Healthcare Services Malpractices Act and its successor, MCARE. Id., at 529, 379 A.2d at 80.

Presently, the clear and unambiguous language of the Healthcare Services Malpractices Act and MCARE require that, in cases where each act is applicable, a basic insurer is liable only for its pro-rata share of delay damages and post-judgment interest. See 40 P.S. 1301.702(j) (now codified at 40 P.S. 1303.714(h)). Accordingly, the holding of Incollingo with regard to assessment of post-judgment interest in medical malpractice cases was limited to its unique facts, and we decline to apply it in contravention of the express intent of the Pennsylvania General Assembly. Id., at 1301.702(j) (now codified at 40 P.S. 1303.714(h)); cf. Walsh v. Medical Prof'l Liab. Catastrophe Loss Fund, 576 Pa. 72, 84, 838 A.2d 692, 700 (2003) (holding that Incollingo did not establish per se rule that all insurers were required to pay more than pro-rata share of post-judgment interest).