**Loretta MULLIGAN and Thomas Mulligan, her husband and Mark Gurevitz**

v.

**Severino PICZON, M.D.**

**Commonwealth of Pennsylvania, Medical Professional Liability Catastrophe Loss Fund, Appellant.**

Commonwealth Court of Pennsylvania.

Argued June 16, 1999.

Decided Sept. 3, 1999.

Reargument Denied Nov. 3, 1999.

Naomi A. Plakins, Doylestown, for appellant.

John T. McLane, Scranton, for amicus curiae.

Before COLINS, President Judge, DOYLE, J., McGINLEY, J., PELLEGRINI, J., KELLEY, J., FLAHERTY, J., and LEADBETTER, J.

McGINLEY, J.

The Medical Professional Liability Catastrophe Loss Fund (CAT Fund),[1] appeals from an order of the Lackawanna County Court of Common Pleas (trial court) that fined the CAT Fund one dollar per day for each day that a designated representative of the agency did not attend the trial in the matter of *Mulligan v. Piczon, et al.*, 95 Civil 1039, as of March 15, 1999.

This controversy arose during the trial of a medical malpractice action commenced against Dr. Piczon (Piczon) and the Community Medical Center (Medical Center) for alleged negligence in the performance

---

1. The CAT Fund does business exclusively within the Commonwealth and all of its clients are medical providers within the Commonwealth. The CAT Fund was created by the Legislature for the:

> purpose of paying all awards, judgments and settlements for loss or damages against a health care provider entitled to participate in the fund ... to the extent such health care provider's share exceeds his basic coverage insurance.

40 P.S. § 1301.701(d).

of orthopedic surgery. Piczon and the Medical Center each held primary professional liability coverage, and were also qualified for excess coverage through the CAT Fund. The Medical Center also had excess coverage through AIG Insurance.[2]

On October 2, 1998, a pre-trial settlement conference was held with all parties present. At the reconvened October 30, 1998, conference Loretta Mulligan, Thomas Mulligan, and Mark Gurevitz (collectively, Plaintiffs) and defense counsel agreed to screen the Plaintiffs videotape of a mock trial. On November 16, 1998, a telephone status conference was held and the case was re-listed for conference on December 7, 1998. The CAT Fund was allowed to participate by phone pursuant to letter request of Robert Wager, Deputy Director of the CAT Fund (Deputy Director), dated October 16, 1998. On November 23, 1998, the reproduced videotape was shared with counsel for Piczon and the insurance carriers who committed to review them and possibly to reassess their respective positions. Due to the delay in circulating the videotape and the trial court's calendar, the December 7, 1998, conference was postponed until January 7, 1999.

On January 7, 1999, with the CAT Fund participating by phone, another settlement conference was held to determine whether the insurance carriers reassessed their positions after viewing the videotape. At that time, although in excess of five weeks passed since the circulation of the videotape, the CAT Fund had not viewed the videotape, despite advance notice of the January 7, 1999, conference and its purpose. Counsel for the Medical Center recommended the CAT Fund tender the policy limits on their behalf. The CAT Fund rejected that advice.

After conference the trial court issued an Attachment Order dated January 7, 1999, to all trial counsel for the period of March 15, 1999, to April 30, 1999. On January 15, 1999, the trial court issued an order and compelled the CAT Fund to name its designee for attachment to the trial, scheduled March 15, 1999, to May 7, 1999, within ten days or by January 25, 1999. On that same date in January, the CAT Fund notified the trial court by phone and in writing, that after reviewing the videotape it chose not to make a settlement offer on behalf of the Medical Center.

On February 22, 1999, Plaintiff's attorney filed a motion to assess delay damages against the CAT Fund pursuant to *Willet v. Pennsylvania Medical Catastrophe Loss Fund*, 549 Pa. 613, 702 A.2d 850 (1997).[3] On the same date, the CAT Fund sent the trial court a letter by facsimile authored by the Deputy Director and advised the trial court that, "the Fund's Office of Chief Counsel has made a number of efforts to locate authority which would support an order directing an employee of this agency to attend the trial—particularly where neither the employee nor the agency is a party to the litigation. Therefore, please accept this as notice that a representative of the fund will not be attending the trial of the *Mulligan* case ..." CAT Fund letter, February 22, 1999, at 1.

The trial court responded: "[y]ou have done nothing to contest the jurisdiction of

---

**2.** The CAT Fund initially offered $1.4 million in February of 1999, on behalf of both defendants to settle the case. As of March 5, 1999, when the trial court entered its contempt order against the CAT Fund, the CAT Fund had made a total offer of $1.65 million to settle the case. $400,000 of the $1.65 million offer was provided by primary carriers who had tendered their primary limits to the CAT Fund. Of the remaining $1.25 million which the CAT Fund offered to pay, $1 million was offered on behalf of Dr. Piczon, the statutory limit of his coverage, and $250,000 was offered on behalf of the Medical Center. Total CAT Fund coverage in force for both was $2.4 million.

**3.** In *Willet,* our Pennsylvania Supreme Court determined that the CAT Fund could be held liable for delay damages that accrued while the CAT Fund had exclusive control of settlement negotiations. 549 Pa. at 623–624, 702 A.2d at 855.

the Court except send me a piece of correspondence that does not represent any legal challenge to the Court's Attachment Order. So if you intend to challenge this Court's jurisdiction, there was a proper way to respond to the Attachment Order, and it wasn't by a letter with a 32 cents stamp on it." Notes of Testimony (N.T.), March 5, 1999, at 7; Reproduced Record (R.R.) at 30a.

On February 25, 1999, the trial court issued a Rule to Show Cause why the CAT Fund should not be held in contempt for ignoring the trial court's January 15, 1999, Attachment Order. The Rule was returnable on March 5, 1999. Subsequent to the Rule, the CAT Fund filed preliminary objections as "non-parties" to the trial court's jurisdiction and to the *sua sponte* rule to show cause why a contempt citation should not be entered. The CAT Fund essentially made the following objections: 1) The trial court had no authority to issue the January 15, 1999, Attachment Order; 2) The trial court had no authority to hold either the CAT Fund or its designee in contempt; 3) Pa.R.C.P. No. 212 or Lacka.Co.R.C.P. No. 212 did not confer jurisdiction on the trial court over the CAT Fund either to issue an Attachment Order, or hold the CAT Fund in contempt. Thus, the CAT Fund moved to vacate the Attachment Order and requested that no employee of the CAT Fund be held in contempt.

■ On March 5, 1999, a combination contempt hearing and settlement conference was held. On March 12, 1999, the trial court ordered the rule be made absolute and held the CAT Fund in technical *de minimis* contempt and also certified that the interlocutory order that involved controlling questions of law and that immediate appeal would materially advance the determination of the controversy.[4] 42 Pa.C.S. § 702(b).

■ The CAT Fund contends that the trial court did not have the authority to compel the daily physical attendance of a non-party for a seven-week trial, or hold a non-party in contempt and levy fines.[5]

## JURISDICTION

■ Before a trial court may exercise its authority or power, it must first have jurisdiction over the subject matter and over the person. *Schifano v. Schifano,* 324 Pa.Super. 281, 471 A.2d 839 (1984).[6]

This Court has been unable to find any case law which holds that a trial court is without jurisdiction over a person or entity when supervising the negotiation of a settlement or other proceedings. In *G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.,* 871 F.2d 648 (7th Cir.1989), the United States Court of Appeals for the 7th Circuit found that:

> Pre-trial procedure has become an integrated part of the judicial process on the trial level. Courts must be free to use it and to control and enforce its operation. Otherwise, the orderly administration of justice will be removed from control of the trial court and placed in the hands of counsel. We do not believe such a

4. Our review when considering an appeal from a contempt order is limited to whether the trial court abused its discretion or committed an error of law. *Richland Township v. Prodex, Inc.,* 166 Pa.Cmwlth. 313, 646 A.2d 652 (1994). When considering an appeal from a contempt order, great reliance must be placed upon the discretion of the trial judge. *Fenstamaker v. Fenstamaker,* 337 Pa.Super. 410, 487 A.2d 11 (1985).

5. The CAT Fund's contention that the trial court violated the separation of powers doctrine has no merit. Trial courts exercise jurisdiction over litigation and supervision of settlement discussions with respect to numerous Commonwealth agencies. The CAT Fund is not a typical government agency. "No claims or expenses against the fund shall be deemed to constitute a debt of the Commonwealth or charge against the General Fund of the Commonwealth." 40 P.S. § 1301.701(e)(4). Therefore, we need not address this contention.

6. The issue of subject matter jurisdiction is not in contention and need not be addressed by this Court.

course is within the contemplation of the law.

The pretrial settlement of litigation has been advocated and used as a means to alleviate overcrowded dockets, and courts have practiced numerous and varied types of pretrial settlement techniques for many years. (citations omitted).

*Id.* at 650–651. The United States Court of Appeals for the 7th Circuit held that a trial court had inherent authority to compel attendance of representatives of a corporation at a pretrial settlement conference even though the trial court was not expressly authorized by F.R.C.P. No. 16, which expressly referred to "attorneys for the parties and any unrepresented parties", and not to parties represented by counsel. That, "the mere absence of language in the federal rules specifically authorizing or describing a particular judicial procedure should not, and does not, give rise to a negative implication of prohibition." *Id.* at 652.

In the case of *In re: LaMarre,* 494 F.2d 753 (6th Cir.1974), the claims manager for the Insurance Company of North America (INA), Charles LaMarre (LaMarre), was ordered to attend settlement conference because of his refusal to accept the settlement recommendation of counsel. LaMarre refused to follow the District Judge's order and was held in contempt. The United States Court of Appeals for the Sixth Circuit held:

> We perceive no ground for denying the trial judge the power to require attendance of any party to the case at any session of the court where the judge deems his presence to be necessary. We believe the District Judge was correct in holding that LaMarre was a party to the proceeding before the court. The Insurance Company of North American [sic] was by contract required to defend and to pay the damages, if any, assessed within its policy limits in the District Court suit entitled Frazier, et al. v. Travelodge International, et al.,

Civil Action No. 36641. While Michigan law, Mich. Comp. Laws Ann. § 500.3030 (1967); *Pitcairn v. Rumsey,* 32 F.Supp. 146 (W.D.Mich.1940), prohibits the naming of any insurance company as a party defendant, *the reality of the matter is that INA had retained counsel, was prepared to defend the suit, and was in complete control of settlement negotiations.* Further, it is undisputed that Charles LaMarre was the resident agent of INA in charge of the case. (emphasis added).

. . .

> It is, of course, clear that on due process grounds, no judge can compel a settlement prior to trial on terms which one or both parties find completely unacceptable. But LaMarre could not, in our judgment, refuse a lawful order to attend such a conference to discuss the matter.

*LaMarre,* 494 F.2d at 756.

We believe the trial court had the authority to invoke personal jurisdiction over the CAT Fund and its representatives because the CAT Fund carries on " ... a continuous and systematic part of its general business within this Commonwealth," 42 Pa.C.S. § 5301(a)(3)(iii), and is mandated to do so, 40 P.S. §§ 1301.701–1301.702, as a " ... statutorily mandated fund which serves as a secondary insurer in medical malpractice cases." *King v. Boettcher,* 537 Pa. 574, 578–79, 645 A.2d 219, 221–22 (1994).

Personal jurisdiction was properly exercised over the CAT Fund given the circumstances. The CAT Fund may be sued in Pennsylvania and a trial court's jurisdiction is exercised or invoked when that occurs. *Willet.* The exercise or invoking of personal jurisdiction constitutes reasonable notice if the manner of service conforms with the rules adopted for service of original process. Pa.R.C.P. No. 400–430. A CAT Fund employee or any other person over whom personal jurisdiction exists, may be subpoenaed and a court's jurisdic-

tion thereby invoked. 42 Pa.C.S. § 5905; Pa.R.C.P. No. 234.1–234.8.

The CAT Fund relied upon *Department of Public Welfare v. Alessi*, 119 Pa. Cmwlth. 160, 546 A.2d 157 (1988). In *Alessi*, we held that the trial court could not invoke jurisdiction over the Department of Public Welfare (DPW) to compel payment for a patient's care. The underlying action involved a commitment proceeding and DPW was not a party. Nevertheless, the trial court ordered that DPW pay for the commitment. DPW appealed the order to pay, but the appeal was quashed because DPW was not a party. The person committed obtained a rule to show cause why DPW should not be held in contempt. The trial court found DPW in contempt, and DPW appealed. We reversed and found that the trial court did not have personal jurisdiction over DPW. We noted that DPW could have been joined as a party but was not, therefore, DPW could not be held in contempt. *Alessi* differs from the present controversy in that jurisdiction over the CAT Fund was properly invoked. The CAT Fund was directly involved in settlement negotiations conducted under the trial court's supervision.

■ A trial court may direct attorneys for parties to appear at a pretrial conference. Pa.R.C.P. No. 212.3. The authority to compel attendance is not limited to attorneys by Pa.R.C.P. No. 212.3 since a *pro se* party can be compelled to attend by order of court and notice. See *Green v. Harmony House Housing Ass'n*, 684 A.2d 1112 (Pa.Cmwlth.1996). The trial court is not limited by Pa.R.C.P. No. 212.3 in compelling persons to attend pretrial settlement conferences. Our Supreme Court has authorized the adoption of local rules which are not inconsistent with any general rule of the Supreme Court or any Act of Assembly. Pa.R.C.P. No. 239(a) and (b)(1). The Legislature, acting within the realm of our Constitution, authorized our courts to exercise jurisdiction and enforce its orders. 42 Pa.C.S. §§ 103 and 323. It necessarily follows that a trial court has the authority to compel attendance of persons over whom it has personal jurisdiction at pretrial settlement conferences.

The trial court can also invoke jurisdiction and order attendance at other stages of the proceedings by order of court providing reasonable notice. See *Green; Stock v. Arnott*, 415 Pa.Super. 113, 608 A.2d 552 (1992); 42 Pa.C.S. § 323. Just as attendance of a *pro se* party is not limited by Pa.R.C.P. No. 212.3 and does not express a limitation on a trial court's authority, neither does Lacka.Co.R.C.P. No. 212.

Lacka.Co.R.C.P. No. 212 provides:

(f) At least one attorney for each party shall appear and conduct the pretrial conference except in the case of parties appearing *pro se*. At least one attorney for each of the parties who is fully familiar with the case and who has complete authority to settle the cases shall appear for each party. If an attorney does not have complete settlement authority, the party *or a person with full settlement authority* shall accompany the attorney to the pretrial conference or shall be available by telephone during the pretrial conference. Counsel are mandated to alert their clients to this requirement and are responsible for having available in person or by telephone a person with full settlement authority for the party whom counsel represents. (emphasis added.)

(g) At some time prior to the filing of the Plaintiff/Defendant Pre–Trial Settlement, all parties shall meet to discuss settlement. It shall be the duty of the plaintiff to take the initiative in holding such a settlement meeting.

(h) If a party or his counsel fails to attend the pretrial conference, the court may make such order or impose such sanctions as in its discretion seem proper under the circumstances.

Lacka.Co.R.C.P. No. 212(f)–(h).

■ Lacka.Co.R.C.P. No. 212 authorizes the trial court to exercise jurisdiction over non-parties including the CAT Fund. The

trial court may require representatives with settlement authority to be available, in person or by telephone, at the trial court's discretion, for pre-trial conferences. In order to facilitate settlement during the course of trial, jurisdiction over the CAT Fund necessarily extends into the trial phase. This is particularly pertinent where counsel for the primary carrier for the Medical Center advised the CAT Fund to tender their policy limits and the CAT Fund ignored counsel's advise. Due to the divergence of opinion between the CAT Fund and counsel for the primary carrier, and without a representative of the CAT Fund present with full authority to settle the case, settlement negotiations were frustrated.[7] We conclude, it was not an abuse of the trial court's discretion, when the CAT Fund had exclusive control over settlement negotiations, to order a representative of the CAT Fund to be present at trial.

## CONTEMPT

 The trial court has the authority to hold the CAT Fund in contempt of court for violating the trial court's order mandating a representative of the CAT Fund to be present at trial. Even a misguided court order must be obeyed until rescinded or reversed. *City of Pittsburgh v. Brunwasser,* 40 Pa.Cmwlth. 197, 396 A.2d 907 (1979); *cert. denied,* 444 U.S. 967, 100 S.Ct. 457, 62 L.Ed.2d 381 (1979). In the instant matter the CAT Fund unilaterally chose to ignore the trial court's order to have a representative present during trial.

7. The trial court afforded the CAT Fund due process when it issued a rule to show cause why the CAT Fund should not be held in contempt for failing to designate a representative to attend the trial. The CAT Fund was given the opportunity to be heard as to why it intended to defy the trial court's order. *See Green,* 684 A.2d at 1114.

Every court shall have power to issue, under its judicial seal, every lawful writ and process necessary or suitable for the exercise of its jurisdiction and for the enforcement of any order which it may make and

## FINES

 The CAT Fund was held in contempt and fined one dollar per day for the length of trial. It was completely within the trial court's discretion to fashion and impose whatever penalty it deemed proper for civil contempt. Courts have broad discretion in fashioning and administering a remedy for civil contempt. *Delaware Valley Citizens' Council for Clean Air v. Commonwealth of Pennsylvania,* 551 F.Supp. 827 (E.D.Pa.1982). The power to punish for contempt is inherent in all courts. *Imprisoned Citizens Union v. Shapp,* 11 F.Supp.2d 586 (E.D.Pa.1998).

Accordingly, we affirm.

## O R D E R

AND NOW, this 3rd day of September, 1999, the order of the Court of Common Pleas of Lackawanna County, in the above captioned matter is affirmed.

Judge DOYLE and Judge FLAHERTY dissent.

all legal and equitable powers required for or incidental to the exercise of its jurisdiction, and, except as otherwise prescribed by general rules, every court shall have power to make such rules and orders of court as the interest of justice or the business of the court may require.

42 Pa.C.S. § 323. The trial court acted in accordance with 42 Pa.C.S. § 5301, general rules Pa.R.C.P. No. 212.3 and 239, Lacka.Co.R.C.P. No. 212, and 42 Pa.C.S. § 323. The trial court did not abuse its discretion or deprive the CAT Fund of due process.