# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jackson Township Supervisors     :
     :
     v.     :   No. 1942 C.D. 2016
     :   Submitted: November 14, 2017
Estate of Catherine Gresh,     :
Dennis Gresh, Administrator,     :
     Appellant     :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE SIMPSON          FILED: December 12, 2017

The Estate of Catherine Gresh, Dennis Gresh, Administrator (Gresh), appeals from an order of the Court of Common Pleas of Cambria County (trial court) that found Gresh in contempt of court and sentenced him to 60 days in county jail, which would be Gresh's second period of confinement in this long-running controversy dating to 2011. The trial court's order stayed the 60-day jail sentence to allow Gresh to satisfy several purge conditions and scheduled a subsequent hearing to determine if Gresh did so. Upon review, we quash Gresh's appeal as interlocutory.

## I. Background

This case was previously before this Court in 2015. See Jackson Twp. Supervisors v. Estate of Gresh (Pa. Cmwlth., No. 1970 C.D. 2014, filed July 9, 2015), 2015 WL 5457012 (unreported) (Gresh I). In Gresh I, we explained that

Gresh is the administrator of his mother's estate, which includes 2.5 acres of land (property) in Jackson Township's (Township) agricultural district.

In 2011, the Township filed a complaint seeking an injunction against Gresh for alleged violations of various Township ordinances governing storage and disposal of solid waste, prohibitions on maintaining nuisances, and zoning. Specifically, the Township alleged the property contains the following offending items: business storage or warehousing of equipment; a partially collapsed residence; unregistered and uninspected motor vehicles in various states of disrepair; scrap metal; lumber; restaurant equipment and other junk; and, a temporary storage building. The Township described the property as an unlicensed junkyard and a nuisance.

After an evidentiary hearing and a site view, the trial court issued an order in August 2011 directing Gresh to comply with the ordinances and remove the offending items from the property by October 2011. When Gresh did not comply, the Township filed a contempt petition in November 2011. After a hearing, the trial court found Gresh in contempt, but it imposed no penalty based on the fact that Gresh made some progress to comply. The trial court allowed Gresh to purge himself of the contempt by completing his efforts to comply with the trial court's order.

In late-December 2011, the Township filed a second petition for contempt. After an evidentiary hearing in January 2012, the trial court determined Gresh did not purge himself of contempt, and it sentenced him to a week in county jail. The trial court deferred the sentence pending a view of the property.

Additionally, the trial court ordered Gresh to: properly dispose of certain vehicles on the property; move other vehicles 30 feet away from the road; and, provide titles and current registrations for the vehicles.

In September 2012, the trial court held a status of contempt hearing to determine whether Gresh made any compliance progress. Gresh did not appear. The trial court issued a bench warrant for his arrest. Authorities apprehended Gresh in June 2014. The trial court held a hearing in July 2014, following which Gresh was found to have served his sentence imposed in January 2012. Gresh was ordered to come into compliance with the trial court's prior order by July 31, 2014 to avoid further contempt proceedings.

In September 2014, the trial court held a contempt hearing. At the hearing, counsel for the parties argued their positions. Gresh offered to present evidence to show compliance efforts. More particularly, he attempted to show registrations for the vehicles on the property, construction of a storage building on the property, and a building permit application to construct another storage structure on the property. However, the trial court did not receive any sworn testimony or evidence. Counsel for the Township disputed full compliance, but attested that Gresh made significant progress. Upon conclusion of the hearing, the trial court entered a contempt order. Gresh appealed to this Court.

On appeal, in Gresh I, this Court determined that the trial court entered its contempt finding after hearing oral argument, without affording Gresh the opportunity to testify and present other evidence. Further, the trial court did not

make any factual findings in support of its order or otherwise identify Gresh's contemptuous conduct. We held the trial court abused its discretion by finding Gresh in contempt without first holding an evidentiary hearing. Thus, we vacated the trial court's determination of civil contempt and remanded for an evidentiary hearing and a decision that contained findings of fact. See Gresh I.

On remand, the trial court held evidentiary hearings in September 2015 and February 2016. At these hearings, the Township presented evidence that: Gresh continued to store unregistered vehicles on the property; Gresh continued to store junked vehicles and parts on the property; Gresh stored lawnmowers and other items in the open, underneath a tractor-trailer; a refrigerator trailer that Gresh indicated in a 2014 conference would be removed was still present and used as storage; permits were issued to Gresh to construct storage sheds and fencing; one unapproved shed was built too close to the road; a section of fencing was installed along the road; items could be seen sticking out above the fence; bottles, cans and other refuse were accumulating on the property; and, vehicles (refrigerator trailer, moss covered camper, several pickup trucks, and a van) were stored closer to the road than permitted by Section 506 of the Township Ordinance. The Township submitted photographs to show each of these alleged violations.

For his part, Gresh testified: he occasionally lives at the residence on the property; he uses the property to store items for a food concession business he operates with his daughter who lives in West Virginia; he uses one white trailer in that business; and, the refrigerator trailer was not moved in two years since he moved

4

it further from the road. Gresh provided West Virginia registrations for the refrigerator trailer, camper, orange van, red van, and various other vehicles.

Ultimately, the trial court entered an order: finding Gresh in contempt for failing to comply with the trial court's prior orders directing the cleanup of the property; setting purge conditions; and, imposing a 60-day jail sentence that was stayed to afford Gresh an opportunity to purge the contempt. The trial court's order set forth the following purge conditions:

> 1) Any items stored on the property must be stored in permanent structures. No items may be stored in temporary structures such as tents or in mobile structures such as tractor-trailers, vans, or other motor vehicles.
>
> 2) [Gresh] shall obtain any necessary permits for the construction of permanent storage sheds or installation of fencing and comply with all applicable building codes.
>
> 3) [Gresh] shall remove from the property:
>
>> i. The refrigerator tractor-trailer.
>>
>> ii. Any tractor-trailer, tent, or other temporary structure or vehicle being used for storage.
>>
>> iii. Any vehicle or tractor-trailer that is not regularly used including the red van, the orange van, and the camper/recreational vehicle. Any vehicles that remain must be regularly used, have the registration kept with the vehicle for immediate inspection, and comply with [Vehicle Code] requirements for registration. See, 75 Pa. C.S. §§ 1301, 1303.
>>
>> iv. All garbage including bottles, cans, and other refuse.

> v. All discarded, abandoned, junked, or wrecked vehicles and any parts thereof.
>
> 4) [Gresh] shall fully comply with all [Township] Ordinances and specifically but not limited to [Township] Ordinances Numbers 12 (related to Junkyards), 87 (related to Solid Waste), and 118 sections 504 and 506.

Tr. Ct. Order 11/1/16, at 1-2. The trial court also scheduled a hearing for January 18, 2017 to determine if Gresh purged himself of the contempt.

Gresh appealed to this Court, and the trial court directed him to file a concise statement of errors complained of on appeal, which he did.

The trial court subsequently issued an opinion pursuant to Pa. R.A.P. 1925(a). Before addressing Gresh's substantive claims, the trial court stated, it had to address two procedural issues: (1) whether its finding of contempt constituted civil or criminal contempt; and, (2) whether the order appealed from was a final, appealable order.

Because resolution of the type of contempt was necessary before it could be ascertained whether its order was final, the trial court explained, it would address that issue first. To that end, the determination of whether a particular order contemplates civil or criminal contempt is critical, as each classification confers distinct procedural rights on a defendant. Kramer v. Kelly, 401 A.2d 799 (Pa. Super. 1979). There is nothing inherent to a contemptuous act or refusal to act that classifies the act itself as "criminal" or "civil." Diamond v. Diamond, 715 A.2d 1190, 1194 (Pa. Super. 1998). The distinction between criminal and civil contempt is rather a distinction between two permissible judicial responses to contumacious behavior.

6

Id. These judicial responses are classified according to the dominant purpose of the court. Id.

Thus, if the dominant purpose is to vindicate the dignity and authority of the court and to protect the interests of the general public, it is a proceeding for criminal contempt. Knaus v. Knaus, 127 A.2d 669 (Pa. 1956). However, where the act of contempt complained of is the refusal to do or refrain from doing some act ordered or prohibited primarily for the benefit of a private party, proceedings to enforce compliance with the decree of the court are civil in nature. Id. The purpose of a civil contempt proceeding is remedial. Id. Judicial sanctions are employed to coerce a defendant into compliance with the court's order, and in some instances, to compensate the complainant for losses sustained. Id. Further,

> [t]he factors generally said to point to a civil contempt are these: (1) Where the complainant is a private person as opposed to the government or a governmental agency; (2) where the proceeding is entitled in the original injunction action and filed as a continuation thereof as opposed to a separate and independent action; (3) where holding the defendant in contempt affords relief to a private party; (4) where the relief requested is primarily for the benefit of the complainant; and (5) where the acts of contempt complained of are primarily civil in character and do not of themselves constitute crimes or conduct by the defendant so contumelious that the court is impelled to act on its own motion.

Id. at 673.

The trial court stated that consideration of these factors led to a conclusion that its order was a finding of civil contempt. The trial court explained that, while the action was filed in the name of the municipality to the benefit of all

7

residents, it was initiated as an original action for injunctive relief, and Gresh's acts of contempt were not criminal in nature. Moreover, it was clear from the record that the trial court's dominant purpose was to coerce Gresh into compliance with the prior orders entered here as well as the Township ordinances rather than to vindicate the dignity and authority of the court. The trial court stated this conclusion was supported by this Court's decision in Gresh I, which indicted that a prior order of contempt here was a finding of civil contempt. See also W. Pittston Borough v. LIW Investments, Inc., 119 A.3d 415 (Pa. Cmwlth. 2015); Borough of Slatington v. Ziegler, 890 A.2d 8 (Pa. Cmwlth. 2005).

To sustain a finding of civil contempt, a complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree that he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and, (3) that the contemnor acted with wrongful intent. Lachat v. Hinchcliffe, 769 A.2d 481 (Pa. Super. 2001). A person may not be held in contempt of court for failing to obey an order that is too vague or that cannot be enforced. Id.

When holding a person in civil contempt, a court must undertake: (1) a rule to show cause; (2) an answer and hearing; (3) a rule absolute; (4) a hearing on the contempt citation; and, (5) an adjudication of contempt. McMahon v. McMahon, 706 A.2d 350 (Pa. Super. 1998). The procedure need not utilize the above nomenclature. Id. The procedure suffices if the contempt order was issued after a full hearing at which evidence was presented, so long as the trial court gave the contemnor an opportunity to purge himself of the contempt by fulfilling a condition.

8

Id.  The trial court must also set a date for a second hearing before finally adjudicating the contempt.  Id.  In cases of civil contempt, until the trial court actually imposes sanctions, an order declaring a party in contempt is interlocutory and not appealable.  Sargent v. Sargent, 733 A.2d 640, 641 (Pa. Super. 1999).

Here, the trial court stated, its order includes: a finding of contempt; a sanction of incarceration for that contempt; an opportunity to purge; and, the scheduling of a hearing at which time there would be either a finding that Gresh purged the contempt or a final adjudication of contempt resulting in imposition of the sanction.  The trial court opined that, because this is a case of civil contempt and the sanction, while established, was not yet imposed, Gresh's appeal should be quashed as interlocutory.

Generally, an order finding a party in contempt is interlocutory and is not appealable unless it imposes sanctions.  Wolanin v. Hashagen, 829 A.2d 331 (Pa. Super. 2003).  An often litigated issue involves conditional sanction orders.  Id.  Such orders impose a sanction, but also include a purge condition, that is, a means of avoiding the sanction.  Id.  Thus,

> [w]hen a contempt order that imposes sanctions also contains a purge condition, the purge condition does not transform a final, appealable order into one that is interlocutory.  If that were the case, a contemnor in a civil contempt action would not be able to appeal the contempt order until he/she was incarcerated or had paid the sums owing as sanctions for contempt.  It seems inappropriate and unnecessarily harsh for a contemnor in a civil contempt action to undergo incarceration or fulfill another sanction before this Court will accept an appeal of a contempt order.  Rather, we conclude that, for a contempt order to be properly appealable, it is only necessary that

9

> the order impose sanctions on the alleged contemnor, and no further court order be required before the sanctions take effect.

Id. at 332-33 (citation omitted). As such, civil contempt orders imposing sanctions generally constitute final, appealable orders *unless a further court order is required to make the sanctions effective*. Rhoades v. Pryce, 874 A.2d 148 (Pa. Super. 2005); see also Stahl v. Redcay, 897 A.2d 478 (Pa. Super. 2006) (stating that civil contempt paired with sanctions constitutes final, appealable order); Diamond; Lachat.

Here, the trial court explained, its order expressly set an additional hearing to determine if Gresh purged himself of the contempt. Alternatively, if Gresh failed to purge himself, the sanction would be imposed and a date of incarceration determined. The trial court stated the initial order did not include a date certain that Gresh would be incarcerated and without a commitment order Gresh could not be subject to the sanction of incarceration. The trial court further explained the second hearing would determine if Gresh purged the contempt, in which case there would be no sanction, or that he failed to purge, in which case a second order would be necessary to establish the date he would need to report to the county jail to serve his sanction. Thus, the trial court stated, Gresh could not be subject to the sanction prior to the occurrence of the subsequent hearing and court action. As a result, the trial court determined this was an interlocutory appeal that should be quashed.

Nevertheless, the trial court addressed each of Gresh's allegations of error in the event this Court deemed the trial court's November 1, 2016 order a final, appealable order.[1]  This matter is now before us for disposition.

## II. Discussion

[1] Specifically, Gresh first asserted the trial court erred in not specifying which conduct he engaged in that was contemptuous.  In response, the trial court stated, while specific findings were not included in the trial court's order, a review of the record as a whole made clear the basis for the finding, *i.e.*, Gresh's continued failure to comply with the trial court's prior order and the relevant Township ordinances.  The trial court further explained the purge conditions were all items Gresh was previously ordered to accomplish to comply with the relevant ordinances, and he consistently failed to do so.

Given the lengthy history of this case, the repeated property views, accompanied by discussions of what needed to be done, the numerous court orders addressing compliance, and the numerous hearings, the trial court stated, it would not accept Gresh's position that he was unaware of the basis for the trial court's finding of contempt.  The trial court stated it was clear during the more than five years that this matter was before the trial court that Gresh had no desire to comply with the trial court's orders or the Township ordinances.  Because the trial court's order was clear as to the basis for its finding of contempt, the trial court rejected Gresh's assertion.

The trial court next considered Gresh's contention that the trial court erred in setting purge conditions in an arbitrary and capricious manner.  Responding to this argument the trial court stated, the law is well-established that "[c]ourts possess an inherent power to enforce their orders by way of the power of contempt."  Dep't of Envtl. Prot. v. Cromwell Twp., Huntingdon Cnty., 32 A.3d 639, 653 (Pa. 2011) (citation omitted).  Further, "[c]ourts have broad discretion in fashioning and administering a remedy for civil contempt."  Mulligan v. Piczon, 739 A.2d 605, 611 (Pa. Cmwlth. 1999), aff'd, 779 A.2d 1143 (Pa. 2001).

Here, the trial court explained, a review of the purge conditions revealed nothing arbitrary or capricious.  Each condition is a requirement of local ordinance or state law.  Further, each condition is clear in what it requires and would leave no doubt in the mind of a reasonable person of the conduct necessary to comply.  Also, while certain vehicles were identified only by type or color, there was no uncertainty as to which vehicles were at issue as the vehicles referenced were the only ones of their type on the property.

As to Gresh's third contention, that the trial court erred in determining the property was subject to the Township ordinances when it should be treated as a nonconforming use as it was previously used for commercial activity, the trial court explained this issue was not raised at the hearings after the remand in Gresh I.  As such, Gresh did not preserve this issue.  Further, the trial court stated, it previously rejected this argument, and Gresh did not timely appeal that decision.

11

Gresh raises three issues on appeal.[2] As a preliminary matter, however, the Township argues there is a threshold issue as to whether this Court has jurisdiction over Gresh's appeal.

To that end, the Township points out that on November 1, 2016, the trial court issued its order finding Gresh in contempt of prior court orders and sentencing him to incarceration, but staying its order for 60 days during which Gresh could purge the contempt by carrying out specific actions listed by the trial court. In its 1925(a) opinion, the trial court indicated that, as a finding of civil contempt, the trial court's order, which provides Gresh an opportunity to purge himself of the contempt, is not final and appealable. See Sargent (premature appeal from finding of contempt is interlocutory and appeal must be quashed).

Here, the Township argues, until Gresh exhausted the opportunity to purge himself of the contempt, the order declaring him in contempt was interlocutory and not appealable. The Township asserts the trial court's order here includes: a finding of contempt; a sanction of incarceration; an opportunity to purge; and, the scheduling of a hearing at which time there would be either a finding that Gresh purged the contempt or a final adjudication of contempt resulting in imposition of the sanction.

---

[2] Gresh first argues the trial court erred in finding him in contempt when it made no findings as to exactly what conduct Gresh engaged in to be in contempt of court. He further asserts the trial court's purge conditions were arbitrary and capricious where the conduct ordered to purge the alleged contempt was not required by law or was too vague to allow for compliance. Additionally, he contends his property is exempt from the ordinances that the Township is attempting to apply because the commercial use of the property existed prior to the current ordinances, and, therefore, Gresh's use of the property is a prior nonconforming use.

12

The Township contends that in <u>Wolanin</u> the Superior Court stated, "we conclude that, for a contempt order to be properly appealable, it is only necessary that the order impose sanctions on the alleged contemnor, and that no further court order be required before the sanctions take effect." <u>Id.</u> at 333. Here, the Township argues, the trial court's order set a further hearing at the end of the 60-day period in which Gresh was permitted to purge himself of the contempt. It asserts that, only if he failed to purge himself, would the sanction be imposed and a date of incarceration set. The Township maintains the trial court's order did not include a date certain that Gresh would be incarcerated and without a commitment order Gresh could not be subject to the sanction of incarceration.

The Township further argues that the last paragraph of the trial court's order states: "A hearing shall be held on Wednesday, January 18, 2017, at 1:00 p.m. in Courtroom Number 2, Cambria County Courthouse, 200 South Center Street, Ebensburg, Pennsylvania, before the Honorable Norman A. Krumenacker, III to determine if [Gresh] has purged himself of the contempt." Reproduced Record (R.R.) at 139. Clearly, the Township asserts, this second hearing would determine if Gresh purged the contempt, in which case there would be no sanction, or that he failed to purge, in which case a second order would be necessary to establish the date he would need to report to the county jail to serve his sanction. The Township contends the November 1, 2016 order did not make Gresh subject to the sanction.

Gresh offers no response to this argument.

13

"An appeal may be taken only from a final order, unless otherwise permitted by rule or statute." Rhoades, 874 A.2d at 151 (citation omitted); Pa. R.A.P. 341(a). The appealability of an order goes directly to the jurisdiction of the court asked to review the order. Stahl. Generally, an order finding a party in contempt is interlocutory and not appealable unless it imposes sanctions. Id. "An often litigated issue in this area involves conditional sanction orders." Id. Such orders impose a sanction, but also include a purge condition, that is, a means of avoiding the sanction. Id.

> When a contempt order that imposes sanctions also contains a purge condition, the purge condition does not transform a final, appealable order into one that is interlocutory. If that were the case, a contemnor in a civil contempt action would not be able to appeal the contempt order until he/she was incarcerated or had paid the sums owing as sanctions for contempt. It seems inappropriate and unnecessarily harsh for a contemnor in a civil contempt action to undergo incarceration or fulfill another sanction before this Court will accept an appeal of a contempt order. Rather, we conclude that, for a contempt order to be properly appealable, it is only necessary that the order impose sanctions on the alleged contemnor, and no further court order be required before the sanctions take effect.

Id. (quoting Wolanin, 829 A.2d at 332-33 (emphasis in original)). Unless sanctions or imprisonment are imposed, an order declaring a party in contempt is interlocutory and not appealable. Takosky v. Henning, 906 A.2d 1255 (Pa. Super. 2006).

> Recently, the Superior Court stated:

> Although this Court has often repeated the refrain that sanctions must be imposed before an order is final and appealable, an examination of the cases reveals that there

14

is often more nuance to the cases beyond a mere lack of sanctions.

In most of the cases, it is clear that either the order did not make a present finding of contempt, or revealed that the trial court contemplated further proceedings, thereby failing to meet the finality requirement of disposing of all claims and all parties. See Takosky, 906 A.2d at 1255 (holding indirect criminal contempt order was not final because order indicated that sentencing would be held at a future time, and, therefore, punishment phase of matter had not yet been determined); [Sargent] (holding order was not final because 'threatened sanction of imprisonment may or may not be imposed in the future depending on whether [a]ppellant pays the past due support'); Kenis v. Perini Corp., [682 A.2d 845, 848 (Pa. Super. 1996)] (holding order was not final because order merely stated that court may hold appellant in contempt and impose daily fine in the future if appellant did not hand over file as ordered); Genovese [v. Genovese, 550 A.2d 1021, 1022-23 (Pa. Super. 1988)] (holding order requiring appellant to pay child support 'or be held in contempt' was not final because it did not impose present finding of contempt or order a sanction); Rulli v. Dunn, [487 A.2d 430, 431 (Pa. Super. 1985)] (holding order was not final because it ordered appellant to comply with order within ten days or face sanctions in the future); McManus v. Chubb Grp. of Ins. Companies, [493 A.2d 84, 86 (Pa. Super. 1985)] (holding that appellant was 'not out of court' until 'threatened sanction' in the form of dismissal of action actually was imposed); Guisler v. Alexander, [453 A.2d 4, 4-5 (Pa. Super. 1982)] (holding show-cause order was not final because it simply ordered a hearing to determine whether a party should be held in contempt); Brodsky v. Philadelphia Athletic Club, Inc., [419 A.2d 1285, 1286-88 (Pa. Super. 1980)] (holding order was not final because chancellor merely threatened to hold party in contempt and issue jail time and fine in future if a decree was not performed); Cedar Valley Civic Ass'n v. Schnabel, [362 A.2d 993, 994 (Pa. Super. 1976)] (holding order was not final because term of imprisonment imposed after contempt finding was stayed to permit appellant to

15

post a bond to ensure compliance with court's previous orders).

K.M.G. v. H.M.W., ___ A.3d ___, ___ (Pa. Super., No. 116 WDA 2017, filed September 29, 2017), 2017 WL 4339575 at *3.

Here, the trial court's contempt order states, as relevant (with emphasis added):

> **AND NOW**, this 1st day of November 2016, upon consideration of the evidence presented at the hearings held September 21, 2015, and February 1, 2016, the briefs of the parties, the record as a whole in this matter, and the laws of the Commonwealth, the Court finds that the Defendant, Dennis Gresh, is in contempt of the Court's prior orders and is sentenced to sixty (60) days in the Cambria County Jail as a result of this contempt. The sentence of incarceration is stayed for sixty (60) days or until the next hearing, to allow the Defendant the opportunity to purge himself of the contempt.
>
> It is **FURTHER ORDERED, DIRECTED, AND DECREED** that the Defendant may purge himself of this contempt by completing the following [purge conditions]:
>
> * * * *
>
> 5) A hearing shall be held on Wednesday January 18, 2017, at 1:00 p.m. in Courtroom Number 2, Cambria County Courthouse, 200 South Center Street Ebensburg, Pennsylvania, before the Honorable Norman A. Krumenacker, III to determine if the Defendant has purged himself of the contempt.

Tr. Ct. Order, 11/1/16 at 1-2.

16

Because the trial court's order here did not impose an immediate sanction, but rather stayed the imposition of the jail sentence for 60 days or until the next hearing, and because the trial court scheduled another hearing after the purge period, the trial court's order is interlocutory and not appealable. Indeed, as the trial court explained:

> Here[,] the order specifically sets an additional hearing to determine if Gresh had purged himself of the contempt or in the alternative if he failed to purge himself the sanction would be imposed and a date of incarceration determined. The initial order did not include a date certain that Gresh would be incarcerated and without a commitment order Gresh could not be subject to the sanction of incarceration. The second hearing would determine if he had purged, in which case there would be no sanction, or he failed to purge, in which case a second order would be necessary to establish the date he would need to report to the county jail to serve his sanction. Thus[,] Gresh could not be subject to the sanction prior to this hearing and court action taking place.

Tr. Ct., Slip Op., 1/19/17, at 10.

In short, because the trial court's order contemplated further proceedings prior to the onset of the sanction, if any, and because the trial court's order gave Gresh an opportunity to avoid the sanction by satisfying the purge conditions, we quash Gresh's appeal, which was filed during the purge period, as premature.

 

 

ROBERT SIMPSON, Judge

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jackson Township Supervisors        :
                                       :
            v.                      :     No. 1942 C.D. 2016
                                         :
Estate of Catherine Gresh,           :
Dennis Gresh, Administrator,        :
                        Appellant     :

# **O R D E R**

**AND NOW**, this 12th day of December, 2017, the appeal of the Estate of Catherine Gresh, Dennis Gresh, Administrator, is **QUASHED**.

 

ROBERT SIMPSON, Judge